In the United States District Court
for the Eastern District of Virginia

| | |
|---|---|
| Chris Gagliastre, Zachary Tarry, Olga Zayneeva, and Norman Pentecost,<br><br>*On behalf of themselves and those similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>Captain George's of South Carolina, LP; Captain George's of South Carolina, Inc.; Captain KDH, LLC; Lideslambous, Inc.; Pitsilambous, Inc.; Pitsilides Management, LLC; George Pitsilides; Sherry Pitsilides; and Doe Corporations 1-4;<br><br>Defendants. | Civil Action No. 2:17-cv-379-RAJ-RJK<br><br>Jury Trial Requested |

## First Amended Class and Collective Action Complaint

1.     Chris Gagliastre, Zachary Tarry, Olga Zayneeva, and Norman Pentecost, on behalf of themselves and all similarly-situated individuals, bring this action against Defendants Captain George's of South Carolina, LP; Captain George's of South Carolina, Inc.; Captain KDH, LLC; Lideslambous, Inc.; Pitsilambous, Inc.;  Pitsilides Management, LLC; George Pitsilides; Sherry Pitsilides; and Doe Corporations 1-4 (collectively "Defendants" or "Captain George's"). Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wage and overtime wages as required by the Fair Labor Standards Act ("FLSA") and

the Virginia Minimum Wage Act ("VMWA"), and for impermissible deductions in violation of the South Carolina Payment of Wages Act ("SCPWA").

2.      Defendants own and operate four seafood buffet restaurants in Myrtle Beach, South Carolina, Kill Devil Hills, North Carolina, Virginia Beach, Virginia, and Williamsburg, Virginia as a single integrated enterprise.

3.      Captain George's was founded by George and Sherry Pitsilides in 1979.

4.      Captain George's is a popular and well-known seafood restaurant for both locals and tourists to Myrtle Beach, Virginia Beach, the Outer Banks, and Williamsburg.

5.      Captain George's employs at least 400 employees year round, and up to 800 employees during the tourist seasons.

6.      Plaintiffs Gagliastre, Tarry, and Zayneeva work or worked for Captain George's as servers at their Myrtle Beach location.

7.      Plaintiff Pentecost worked for Captain George's as a server at their Williamsburg location.

8.      Defendants have repeatedly violated the FLSA by improperly applying a tip credit to servers' wages.

9.      Defendants have not provided proper notice of the tip credit provisions of the FLSA to its servers.

10.      Defendants require servers to give a percentage of their tips each night to the "house," *i.e.*, to the restaurant itself.

11.      As a result, Defendants are regularly paid more by their servers in misappropriated tips than Defendants pay to servers in wages.

2

12.     Defendants require servers to share tips with other non-tipped employees who are not properly included in the servers' tip pool.

13.     Defendants require servers to work off the clock.

14.     When Defendants' servers work over 40 hours per week, they are either required to work off the clock for this time, or they are paid at the incorrect overtime rate.

15.     Defendants require servers to spend more than 20% of their time at work completing non-tipped sidework.

16.     Defendants take impermissible deductions from servers' wages, for things such as uniforms and customer walkouts.

17.     Defendants maintain a policy and practice of underpaying their servers in violation of the FLSA.

18.     All servers at the Captain George's restaurants, including Plaintiffs, are subject to the same or similar employment policies and practices, including policies and practices with respect to wages paid, and with respect to tips.

19.     Plaintiffs bring this action on behalf of themselves and similarly situated current and former servers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b), to remedy violations of the FLSA wage and hour provisions by Defendants.

20.     Plaintiffs Gagliastre, Tarry, and Zayneeva bring this action on behalf of themselves and similarly situated current and former servers in South Carolina, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of the SCPWA, S.C. Code Ann. § 40-10-30(A).

21.     Plaintiff Pentecost brings this action on behalf of himself and similarly situated current and former servers in Virginia, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of the VMWA, Va. Code §§ 40.1-28.8, *et seq.*

## I.  Jurisdiction and Venue

22.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

23.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' Virginia and South Carolina law claims.

24.     Venue in this Court is proper under 28 U.S.C. § 1391(b).

## II.  Parties

**Plaintiffs**

**Chris Gagliastre**

25.     Plaintiff Chris Gagliastre is an individual residing in Horry County, South Carolina.

26.     Gagliastre has given written consent to join this action.

27.     At all relevant times, Gagliastre was an "employee" of Defendants within the meaning of the FLSA and the SCPWA.

**Zachary Tarry**

28.     Plaintiff Zachary Tarry is an individual residing in Horry County, South Carolina.

29.     Tarry has given written consent to join this action.

30.     At all relevant times, Tarry was an "employee" of Defendants within the meaning of the FLSA and the SCPWA.

4

**Olga Zayneeva**

31.     Plaintiff Olga Zayneeva is an individual residing in Horry County, South Carolina.

32.     Zayneeva has given written consent to join this action.

33.     At all relevant times, Zayneeva has been an "employee" of Defendants within the meaning of the FLSA and the SCPWA.

**Norman Pentecost**

34.     Plaintiff Norman Pentecost is an individual residing in James City County, Virginia.

35.     Pentecost has given written consent to join this action.

36.     At all relevant times, Pentecost was an "employee" of Defendants within the meaning of the FLSA and the VMWA.

**<u>Defendants</u>**

37.     Defendants have jointly employed Plaintiffs and similarly situated servers at all times relevant.

38.     Each of the Defendants had control over Plaintiffs' and similarly situated servers' working conditions.

39.     Defendants are part of a single integrated enterprise.

40.     At all relevant times, the Captain George's restaurants shared common management and were centrally controlled and/or owned by George Pitsilides, Sherry Pitsilides, Nicole Perkins, and Kristina Chastain.

41.     At all relevant times, Defendants maintained control over labor relations at the Captain George's restaurants.

42.     During all relevant times, Defendants permitted employees to transfer or be shared by and between the Captain George's restaurants without retraining.

43.     Defendants centrally control and co-operate the Captain George's restaurants from their headquarters at 1956 Laskin Road, Virginia Beach, Virginia 23454.

44.     Defendants centrally control marketing efforts, payroll services, benefits management, food, beverage and supply purchasing services, and some premises and equipment management services.

45.     Defendants suffer or permit Plaintiff and other servers to work.

46.     Defendants have direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated servers.

**Captain George's of South Carolina, LP**

47.     Defendant Captain George's of South Carolina, LP is a foreign limited partnership, with its headquarters in Virginia.

48.     Captain George's of South Carolina, LP's owner and President is George Pitsilides.

49.     Captain George's of South Carolina, LP is headquartered at 1956 Laskin Road, Virginia Beach, Virginia 23454.

50.     Captain George's of South Carolina, LP is an "employer" of Plaintiffs and similarly situated servers as that term is defined by the FLSA.

51.     Captain George's of South Carolina, LP applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers at all of its

locations, including policies, practices, and procedures relating to payment of minimum wages, overtime wages, tip pooling, side work, and clock in/out procedures.

52.     Captain George's of South Carolina, LP maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, expense reimbursements, and other practices.

53.     Captain George's of South Carolina, LP has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

54.     Captain George's of South Carolina, LP's gross revenue exceeds $500,000 per year.

**Captain George's of South Carolina, Inc.**

55.     Defendant Captain George's of South Carolina, Inc. is a foreign corporation with its headquarters in Virginia.

56.     Captain George's of South Carolina, Inc.'s owner and President is George Pitsilides.

57.     Captain George's of South Carolina, Inc. is headquartered at 1956 Laskin Road, Virginia Beach, Virginia 23454.

58.     Captain George's of South Carolina, Inc. is an "employer" of Plaintiffs and similarly situated servers as that term is defined by the FLSA.

59.     Captain George's of South Carolina, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers at all of its

locations, including policies, practices, and procedures relating to payment of minimum wages, overtime wages, tip pooling, side work, and clock in/out procedures.

60.     Captain George's of South Carolina, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, expense reimbursements, and other practices.

61.     Captain George's of South Carolina, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

62.     Captain George's of South Carolina, Inc.'s gross revenue exceeds $500,000 per year.

**Captain KDH, LLC**

63.     Defendant Captain KDH, LLC is a foreign limited liability company with its headquarters in Virginia.

64.     Captain KDH, LLC's owner and President is George Pitsilides.

65.     Captain KDH, LLC is headquartered at 1956 Laskin Road, Virginia Beach, Virginia 23454.

66.     Captain KDH, LLC is an "employer" of Plaintiffs and similarly situated servers as that term is defined by the FLSA.

67.     Captain KDH, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, overtime wages, tip pooling, side work, and clock in/out procedures.

8

68.     Captain KDH, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, expense reimbursements, and other practices.

69.     Captain KDH, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

70.     Captain KDH, LLC's gross revenue exceeds $500,000 per year.

**Pitsilambous, Inc.**

71.     Defendant Pitsilambous, Inc. is a foreign corporation with its headquarters in Virginia.

72.     Pitsilambous, Inc.'s owner and President is George Pitsilides.

73.     Pitsilambous, Inc. is headquartered at 1956 Laskin Road, Virginia Beach, Virginia 23454.

74.     Pitsilambous, Inc. is an "employer" of Plaintiffs and similarly situated servers as that term is defined by the FLSA.

75.     Pitsilambous, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, overtime wages, tip pooling, side work, and clock in/out procedures.

76.     Pitsilambous, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, expense reimbursements, and other practices.

77.     Pitsilambous, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

78.     Pitsilambous, Inc.'s gross revenue exceeds $500,000 per year.

**Lideslambous, Inc.**

79.     Defendant Lideslambous, Inc. is a foreign corporation with its headquarters in Virginia.

80.     Lideslambous, Inc.'s owner and President is George Pitsilides.

81.     Lideslambous, Inc. is headquartered at 1956 Laskin Road, Virginia Beach, Virginia 23454.

82.     Lideslambous, Inc. is an "employer" of Plaintiffs and similarly situated servers as that term is defined by the FLSA.

83.     Lideslambous, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, overtime wages, tip pooling, side work, and clock in/out procedures.

84.     Lideslambous, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, expense reimbursements, and other practices.

85.     Lideslambous, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

86.     Lideslambous, Inc.'s gross revenue exceeds $500,000 per year.

**Pitsilides Management, LLC**

87.     Defendant Pitsilides Management, LLC is a foreign limited liability company with its headquarters in Virginia.

88.     Pitsilides Management, LLC's President is George Pitsilides.

89.     Pitsilides Management, LLC is headquartered at 1956 Laskin Road, Virginia Beach, Virginia 23454.

90.     Pitsilides Management, LLC is an "employer" of Plaintiffs and similarly situated servers as that term is defined by the FLSA.

91.     Through Pitsilides Management, LLC, Defendants centralize their payroll and benefits policies, practices, and operations.

92.     Pitsilides Management, LLC receives a management fee from Pitsilambous, Inc., Lideslambous, Inc., Captain KDH, LLC, and Captain George's of South Carolina, LP for marketing efforts, payroll services, benefits management, food, beverage and supply purchasing services, and some premises and equipment management services.

93.     Pitsilides Management, LLC receives reports from Pitsilambous, Inc., Lideslambous, Inc., Captain KDH, LLC, and Captain George's of South Carolina, LP every two weeks regarding hours worked by the employees at the four Captain George's locations, generates paychecks, and overnights the paychecks to the four Captain George's locations.

94.     Pitsilides Management, LLC maintains the payroll records for all of Defendants' employees.

95.     Pitsilides Management, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers at all of its locations, including

policies, practices, and procedures relating to payment of minimum wages, overtime wages, tips, side work, deductions, and clock in/out procedures.

96.     Pitsilides Management, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, timekeeping, payroll, expense reimbursements, deductions, tips, and other practices.

97.     Pitsilides Management, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

98.     Pitsilides Management, LLC's gross revenue exceeds $500,000 per year.

**George Pitsilides**

99.     Defendant George Pitsilides is the founder, owner, and operator of all of the Defendant entities.

100.    George Pitsilides is the owner and president of Capt. George's Seafood Restaurants, LP.

101.    George Pitsilides is the owner and president of Captain George's of South Carolina, LP.

102.    George Pitsilides is the owner and president of Captain George's of South Carolina, Inc.

103.    George Pitsilides is the owner and president of The Captain at the Beach, LLC.

104.    George Pitsilides is the owner and president of Captain KDH, LLC.

105.    George Pitsilides is the owner and president of PitCo 1, LLC.

106.    George Pitsilides is the owner and president of PitNorth, LLC.

107.     George Pitsilides is the owner and president of Pitsilambous, Inc.

108.     George Pitsilides is the owner and president of Lideslambous, Inc.

109.     George Pitsilides lives in Virginia Beach, Virginia.

110.     George Pitsilides is a hands-on owner who oversees operations in all four of his restaurants.

111.     In an article for U.S. Business Executive magazine, George Pitsilides stated that he is a hands-on owner who oversees operations in all four of his restaurants.

112.     Upon information and belief, George Pitsilides operates and controls the Defendant corporations from their headquarters at 1956 Laskin Road, Virginia Beach, Virginia 23454.

113.     At all relevant times, George Pitsilides has been an "employer" of Plaintiffs and similarly situated delivery drivers as that term is defined by the FLSA.

114.     At all relevant times, George Pitsilides has been actively involved in managing the operations of the Captain George's restaurants.

115.     At all relevant times, George Pitsilides has had control over Defendants' pay policies.

116.     At all relevant times, George Pitsilides has had power over personnel and payroll decisions at the Captain George's restaurants.

117.     At all relevant times, George Pitsilides has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

118.     At all times relevant, George Pitsilides has had the power to transfer the assets and liabilities of each of the named corporate defendants.

119. At all relevant times, George Pitsilides has had the power to declare bankruptcy on behalf of each of the named corporate defendants.

120. At all relevant times, George Pitsilides has had the power to enter into contracts on behalf of each of the named corporate defendants.

121. At all relevant times, George Pitsilides has had the power to close, shut down, and/or sell each of the named corporate defendants.

**Sharon (Sherry) Pitsilides**

122. Defendant Sherry Pitsilides is a founder, owner, and operator of all of the Defendant entities.

123. Upon information and belief, Sherry Pitsilides lives in Virginia Beach, Virginia.

124. Upon information and belief, Sherry Pitsilides operates and controls the Defendant corporations from their headquarters at 1956 Laskin Road, Virginia Beach, Virginia 23454.

125. At all relevant times, Sherry Pitsilides has been an "employer" of Plaintiffs and similarly situated delivery drivers as that term is defined by the FLSA.

126. Sherry Pitsilides is an employee of Pitsilides Management, LLC.

127. Sherry Pitsilides owns a minority interest in each of the entities that operates the four Captain George's restaurant locations: she owns 35% of shares in Pitsilambous, Inc.; she owns 30% of the shares in Lideslambous, Inc.; she is the beneficial owner, through a revocable trust, of a minority membership interest in Captain KDH, LLC, representing 30% of the total membership interest in that company; and she has an indirect, minority interest in Captain George's of South Carolina, Inc.

128.     Sherry Pitsilides has worked alongside her husband in operating the Captain George's restaurants for forty years.

129.     George Pitsilides has credited the success of the Captain George's restaurants to he and Sherry Pitsilides' team approach and the way they handle everyday operations together.

130.     At all relevant times, Sherry Pitsilides has been actively involved in managing the operations of the Captain George's restaurants.

131.     At all relevant times, Sherry Pitsilides has had control over Defendants' pay policies.

132.     At all relevant times, Sherry Pitsilides has had power over personnel and payroll decisions at the Captain George's restaurants.

133.     At all relevant times, Sherry Pitsilides has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

134.     At all times relevant, Sherry Pitsilides has had the power to transfer the assets and liabilities of each of the named corporate defendants.

135.     At all relevant times, Sherry Pitsilides has had the power to declare bankruptcy on behalf of each of the named corporate defendants.

136.     At all relevant times, Sherry Pitsilides has had the power to enter into contracts on behalf of each of the named corporate defendants.

137.     At all relevant times, Sherry Pitsilides has had the power to close, shut down, and/or sell each of the named corporate defendants.

**Doe Corporations 1-4**

138.    Upon information and belief, Defendants own and operate other corporate entities and/or limited liability companies that also qualify as Plaintiffs' "employers" under the FLSA.

139.    These defendants may include, but are not limited to, Pitsilides, Inc.; Pitsilides Management of SC, Inc.; and Pitsilides Family, LLC; PitCo Family, LLC; and PitCo 2, LLC.

III.    **Facts**

### CLASSWIDE FACTUAL ALLEGATIONS

140.    During all relevant times, Defendants have operated the Captain George's Seafood Restaurants in Myrtle Beach, South Carolina, Kill Devil Hills, North Carolina, Virginia Beach, Virginia, and Williamsburg, Virginia.

141.    Plaintiffs and the similarly situated persons they seek to represent are current and former servers or other employees paid minimum wage minus a tip credit (herein, "servers") employed by Defendants.

142.    All servers employed by Defendants over the last three years had essentially the same job duties – to serve food and drinks to customers at Captain George's restaurants.

143.    At all relevant times, Defendants paid servers below minimum wage.

144.    Defendants purported to pay servers tip credit minimum wage, which is $2.13 per hour.

145.    However, during some or all of the time period relevant to this Amended Complaint, Defendants have paid servers $2.125 per hour.

146.    Even if Defendants had paid tipped minimum wage, Defendants failed to satisfy all of the requirements in taking a tip credit from servers' wages.  Specifically, Defendants failed to notify servers that they would be taking a tip credit from their wages, failed to compensate

16

servers for all hours worked, misappropriated servers' tips and forced servers to share tips with managerial and/or other employees who are not eligible to share in the tip pool, required servers to spend more than 20% of their time at work in a non-tipped capacity, took impermissible deductions from servers' tips and wages, and failed to pay proper overtime to employees who worked greater than 40 hours in a week.

147.    Defendants failed to provide proper notice to servers that they would be taking a tip credit from their wages.

148.    Defendants required servers to pay a certain percentage of their total sales directly to the restaurant out of the tips they received.

149.    Servers regularly had to pay between 2% or 3% of their total sales for a shift to the restaurant out of their tips. For example, if they generated $1,000 in sales, and were tipped $200 from the customers, they would be required to pay $20 (2%) or $30 (3%) to the restaurant out of their tips.

150.    As a result of Defendants house tip-out policy, Defendants regularly receive more money from their servers in misappropriated tips than they pay to their servers in wages.

151.    Defendants used servers' tips to pay hourly wages bussers and setters.

152.    Servers were also required to share tips with silverware rollers who were not customarily engaged in customer service.

153.    Servers were also required to share tips with bartenders and/or assistant managers who were not customarily engaged in customer service.

154.    Defendants required servers to complete cleaning duties at the beginning and/or end of each shift which often encompassed more than 20% of their time at work.

155.    Defendants required servers and other employees to complete work "off the clock."

156.    When servers' overtime hours were recorded and paid by Defendants, they were paid at the incorrect overtime rate.

157.    Specifically, Defendants paid servers an overtime rate based on one-and-a-half times tipped minimum wage rather than one-and-a-half times regular minimum wage.

158.    At least one Captain George's location (in Williamsburg, Virginia), Defendants required servers to pay for any drawer shortages or customer walk-outs.

159.    Defendants required servers to purchase slip-resistant work shoes to work at Captain George's.

160.    Defendants required servers to purchase one uniform shirt at the beginning of their employment. If the server worked for Defendants for six months, they either received another work shirt for free, and were reimbursed for the uniform shirt they purchased.

161.    Defendants required server to purchase and/or provide their own tools of employment, such as wine openers.

162.    If a server from at least one of the Captain George's location (Williamsburg, Virginia) lost or forgot to bring their POSitouch card, which was used to swipe into the point of sale system, Defendants required them to pay between $10.00 and $20.00 to replace the card or re-program a different card for that server to use.

**PLAINTIFFS' INDIVIDUAL FACTUAL ALLEGATIONS**

163.    Consistent with their policies, patterns, and practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Chris Gagliastre**

164.     Chris Gagliastre worked as a server at Captain George's restaurant in Myrtle Beach, South Carolina from March 2015 to August 2015.

165.     Gagliastre typically worked 35-40 hours per week for Defendants.

166.     As a server, Gagliastre's primary job duties included waiting on guests.

167.     Gagliastre also regularly completed 1-2 hours of side work at the beginning and/or end of each shift.

168.     Gagliastre was paid $2.125 per hour for all hours worked.

169.     Gagliastre was never provided notice of the tip credit provisions of the FLSA by Defendants.

170.     At the end of each shift, Gagliastre had to give 3% of the sales he obtained directly to the restaurant out of his tips.

171.     Gagliastre also had to tip out an additional amount—often between $4 and $7—to silverware rollers for each shift he worked.

172.     Gagliastre worked some overtime hours, but Defendants rounded his work hours down so that he would not be paid overtime pay.

173.     Gagliastre was required to pay for his first work uniform when he started at Captain George's.

174.     Gagliastre was required to purchase his own slip resistant shoes to work for Defendants.

**Zachary Tarry**

175.     Zachary Tarry worked as a server at Captain George's restaurant in Myrtle Beach, South Carolina from August 2014 to the summer of 2015.

176.     Tarry worked for Defendants as a bartender in the summer of 2015, and became an assistant manager in late summer 2015.

177.     Tarry regularly worked over 40 hours per week for Defendants.

178.     As a server, Tarry's primary job duties included waiting on guests.

179.     Tarry regularly completed 1-2 hours of side work at the beginning and/or end of each shift.

180.     Tarry was paid $2.125 per hour for all hours worked as a server.

181.     Tarry was never provided notice of the tip credit provisions of the FLSA by Defendants.

182.     At the end of each shift, Tarry had to give either 2% or 3% of the sales he obtained directly to the restaurant out of his tips.

183.     As a server, Tarry also had to tip out the silverware rollers either $4 or $7.

184.     As a manager, he collected this house tip-out money from the servers, placed it in an envelope, and placed it in the restaurant's safe.

185.     When Tarry worked overtime hours as a server, he was required to clock out and work overtime off the clock. He was not paid for this time.

186.     On the occasions where Tarry did work overtime hours that were properly recorded, he was paid overtime at $3.188 per hour, which is the wrong overtime rate.

187.     When Tarry started, he was required to purchase his first work uniform from Defendants.

188.     Tarry was required to purchase his own slip resistant shoes to work for Defendants.

189.     After Tarry became a bartender / assistant manager in 2015, he was informed that he would be paid a flat rate per day, plus a percentage of the servers' tip-out.

190.     When he first became a bartender / assistant manager, for the first month approximately, he was paid $50 per day, plus .0015% or .002% of the servers' tip-out.

191.     Eventually, Tarry was $100 per day, plus .0015% or .002% of the servers' tip-out.

192.     As a bartender / assistant manager, Tarry was not required to clock in and out.

193.     As a bartender / assistant manager, Tarry regularly worked over 40 hours per week.

194.     During the offseason, as a bartender / assistant manager, Tarry worked approximately 45 to 55 hours per week consistently. His normal schedule was 5 days per week, from 3:00pm to 12:30 or 1:00am.

195.     During the peak season, as a bartender / assistant manager, Tarry worked approximately 55 to 65 hours per week consistently. His normal schedule was 5 days per week, from 1:00pm to 12:30 or 1:00am.

196.     However, when Tarry worked his normal schedule as a bartender / assistant manager, Defendants only recorded 40 hours on his time records, and paid him $100 per shift, or $500 for the week.

197.     On the other hand, when Tarry worked fewer than 5 days in a given week, he was not paid $500 for the week, but instead an amount the corresponded with the number of days he worked.

198.     As a bartender / assistant manager, Tarry was primarily responsible for ensuring that the restaurant operated smoothly. He was supposed to help any servers that had issues, help ensure the computer system was operating properly, complete "table checks" (i.e., registering each table on a handheld iPad to ensure servers weren't charging people off the books), and disciplined servers. For example, servers that broke company rules would be assigned to extra side work.

**Olga Zayneeva**

199.   Olga Zayneeva has worked as a server at Captain George's restaurant in Myrtle Beach, South Carolina from June 2015 to present.

200.     Zayneeva typically works 20-40 hours per week for Defendants.

201.     As a server, Zayneeva's primary job duties include waiting on guests.

202.     Zayneeva also regularly completes 1-2 hours of side work at the beginning and/or end of each shift.

203.     Zayneeva is paid $2.125 per hour for all hours worked.

204.     Zayneeva was never provided notice of the tip credit provisions of the FLSA by Defendants.

205.     At the end of each shift, Zayneeva has to give either 2% or 3% of the sales she obtained directly to the restaurant out of her tips.

206.     Zayneeva also had to pay the silverware rollers $4 or $7 per shift out of her tips for rolling silverware.

207.     Zayneeva worked some overtime hours, but Defendants rounded her work hours down so that she would not be paid overtime pay.

208.    Zayneeva was required to purchase her uniform shirt from Defendants.

209.    Zayneeva was required to purchase her own slip resistant work shoes to work for Defendants.

**Norman Pentecost**

210.    Norman Pentecost worked as a server at Captain George's restaurant in Williamsburg, Virginia for the first in time in March 1998, and most recently from 2007 until May 28, 2017.

211.    Pentecost typically worked 30-40 hours per week for Defendants.

212.    As a server, Pentecost's primary job duties include waiting on guests.

213.    Pentecost also regularly completes an hour or more of side work at the beginning and/or end of each shift.

214.    Pentecost is paid $2.125 per hour for all hours worked.

215.    Pentecost was never provided notice of the tip credit provisions of the FLSA by Defendants.

216.    At the end of each shift, Pentecost has to give either 2% or 2.25% of the sales she obtained directly to the restaurant out of his tips.

217.    Pentecost was required to pay an additional amount out of his tips each night to silverware rollers.

218.    Pentecost was required to purchase slip-resistant shoes for work he performed for Defendants.

219.    Pentecost worked some overtime hours off the clock.

**IV.    Collective Action Allegations**

220. Plaintiffs bring the First and Second Counts on behalf of themselves and all similarly situated current and former servers employed at the Captain George's restaurants owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

221. At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked, failing to provide notice of the tip credit as required by the FLSA, misappropriating their tips, requiring them to work off the clock, requiring them to spend more than 20% of their time at work in a non-tipped capacity, making impermissible deductions from their wages, and refusing to pay them overtime compensation. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

222. Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay Plaintiffs and the FLSA Collective.

223. Defendants are aware or should have been aware that federal law requires them to pay all tipped employees at least $2.13 per hour.

224. Defendants are aware or should have been aware that federal law requires them to provide notice of the tip credit provisions of the FLSA to any employee from whose wages they intend to take a tip credit.

24

225.   Defendants are aware or should have been aware that federal law prohibits them from paying employees tip credit minimum wage unless they adhere to certain rules, including rules against misappropriating employee tips.

226.   Defendants are aware or should have been aware that federal law requires them to pay employees at least full minimum wage for all hours worked in a non-tipped capacity.

227.   Defendants are aware or should have been aware that federal law prohibits them from taking deductions from employees' wages for certain uniforms, customer walkouts, and other expenses.

228.   Defendants are aware or should have been aware that federal law requires them to pay employees for all hours worked.

229.   Defendants are aware or should have been aware that federal law requires them to pay time and one half overtime wages to employees who work over 40 hours in a workweek.

230.   Defendants' unlawful conduct has been widespread, repeated, and consistent.

231.   The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

232.   The FLSA Collective members are readily identifiable and ascertainable.

233.   For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

234.   In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

## V.     South Carolina Class Action Allegations

235.    Plaintiffs Gagliastre, Tarry, and Zayneeva (the "South Carolina Class Representatives") bring the Third Count under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All persons who work or worked as servers and/or have been paid minimum wage minus a tip credit for Captain George's of South Carolina, LP; Captain George's of South Carolina, Inc.; Captain KDH, LLC; Lideslambous, Inc.; Pitsilambous, Inc.; Pitsilides Management, LLC; George Pitsilides; Sherry Pitsilides; and Doe Corporations 1-4 in South Carolina between May 19, 2014 and the date of final judgment in this matter (the "South Carolina Class").

236.    Excluded from the South Carolina Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the South Carolina Class.

237.    The number and identity of the South Carolina Class members are ascertainable from Defendants' records.  The hours assigned and worked, the positions held, and the rates of pay, tips received, and deductions made from the pay of each South Carolina Class Member are also determinable from Defendants' records.  For the purpose of notice and other purposes related to this action, their names and contact information are available from Defendants.  Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

238.    The South Carolina Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

239.    There are more than 50 South Carolina Class members.

240.    The South Carolina Class Representatives' claims are typical of those claims which could be alleged by any South Carolina Class member, and the relief sought is typical of the relief which would be sought by each South Carolina Class member in separate actions.

241.    The South Carolina Class Representatives and the South Carolina Class members were subject to the same corporate practices of Defendants, as alleged herein, of having their tips unlawfully deducted by Defendants.

242.    The South Carolina Class Representatives and the South Carolina Class members have all sustained similar types of damages as a result of Defendants' failure to comply with S.C. Code Ann. § 41-10-10, *et seq*.

243.    The South Carolina Class Representatives and the South Carolina Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all South Carolina Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the South Carolina Class members.

244.    The South Carolina Class Representatives and the South Carolina Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

245.    By seeking to represent the interests of the South Carolina Class members, the South Carolina Class Representatives are exercising and intend to exercise their right to engage in concerted activity for the mutual aid or benefit of themselves and their co-workers.

246.     The South Carolina Class Representatives are able to fairly and adequately protect the interests of the South Carolina Class and have no interests antagonistic to the South Carolina Class.

247.     The South Carolina Class Representatives are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

248.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual South Carolina Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual South Carolina Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs.  The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual South Carolina Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the South Carolina Class members' rights and the disposition

of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

249.    Upon information and belief, Defendants and other employers throughout the state violate S.C. Code Ann. § 41-10-10, *et seq*.  Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

250.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

251.    Common questions of law and fact exist as to the South Carolina Class that predominate over any questions only affecting the South Carolina Class Representatives and the South Carolina Class members individually and include, but are not limited to:

  a.  Whether Defendants took deductions from the wages and/or tips of the South Carolina Class Representatives and the South Carolina Class;

  b.  Whether Defendants' policy of failing to pay the South Carolina Class Representatives and the South Carolina Class was instituted willfully or with reckless disregard of the law; and

  c.  The nature and extent of class-wide injury and the measure of damages for those injuries.

**VI.    Virginia Class Action Allegations**

29

252.   Plaintiff Pentecost brings the Fourth Count under Federal Rule of Civil Procedure

23, on behalf of himself and a class of persons consisting of:

> All persons who work or worked as servers and/or have been paid minimum wage minus a tip credit for Captain George's of South Carolina, LP; Captain George's of South Carolina, Inc.; Captain KDH, LLC; Lideslambous, Inc.; Pitsilambous, Inc.; Pitsilides Management, LLC; George Pitsilides; Sherry Pitsilides; and Doe Corporations 1-4 in Virginia between May 19, 2015 and the date of final judgment in this matter (the "Virginia Class").

253.   Excluded from the Virginia Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Virginia Class.

254.   The number and identity of the Virginia Class members are ascertainable from Defendants' records.  The hours assigned and worked, the positions held, and the rates of pay, tips received, and deductions made from the pay of each Virginia Class Member are also determinable from Defendants' records.  For the purpose of notice and other purposes related to this action, their names and contact information are available from Defendants.  Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

255.   The Virginia Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

256.   There are more than 50 Virginia Class members.

257.    Pentecost's claims are typical of those claims which could be alleged by any Virginia Class member, and the relief sought is typical of the relief which would be sought by each Virginia Class member in separate actions.

258.    Pentecost and the Virginia Class members were subject to the same corporate practices of Defendants, as alleged herein, of being paid at $2.125 per hour, not receiving notice of the tip credit provisions of the FLSA, being required to pay out a portion of their tips to the house and to silverware rollers, being required to spend more than 20% of their time at work in a non-tipped capacity, being required to work off the clock, and having improper deductions taken from their wages by Defendants.

259.    Pentecost and the Virginia Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Va. Code §§ 40.1-28.8, *et seq*.

260.    Pentecost and the Virginia Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Virginia Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Virginia Class members.

261.    Pentecost and the Virginia Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

262.    By seeking to represent the interests of the Virginia Class members, Pentecost is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

263.     Pentecost is able to fairly and adequately protect the interests of the Virginia Class and have no interests antagonistic to the Virginia Class.

264.     Pentecost is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

265.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Virginia Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Virginia Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs.  The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Virginia Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Virginia Class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of

common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

266.  Upon information and belief, Defendants and other employers throughout the state violate Va. Code §§ 40.1-28.8, *et seq*.  Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

267.  This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

268.  Common questions of law and fact exist as to the Va. Code §§ 40.1-28.8, *et seq* Class that predominate over any questions only affecting Pentecost and the Virginia Class members individually and include, but are not limited to:

   a.  Whether Defendants paid Pentecost and the Virginia Class members at the proper minimum wage rate for all hours worked;

   b.  Whether Pentecost and the Virginia Class members spent more than 20% of their time at work in a non-tipped capacity;

   c.  Whether Defendants properly compensated Pentecost and the Virginia Class members for hours worked in excess of 40 hours each workweek;

   d.  Whether Defendants were permitted to take a tip credit from the wages of Pentecost and the Virginia Class members;

   e.  Whether Defendants took improper deductions from the wages and/or tips of Pentecost and the Virginia Class;

33

f.   Whether Defendants' policy of failing to pay Pentecost and the Virginia Class was instituted willfully or with reckless disregard of the law; and

g.   The nature and extent of class-wide injury and the measure of damages for those injuries.

## VII.   Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiffs and the FLSA Collective)

269.   Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

270.   Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

271.   Plaintiffs and the FLSA Collective were not given proper notice of the tip provisions of the FLSA.

272.   Plaintiffs and the FLSA Collective were denied proper minimum wage because Defendants paid them $2.125 per hour, which is less than the permissible minimum wage minus a tip credit.

273.   Plaintiffs and the FLSA Collective were denied proper minimum wage because they were required to share tips with parties and individuals who are not permitted to be included in a valid tip pool, including Defendants themselves, Defendants' bartenders, silverware rollers, bussers, and setters.

274.    Plaintiffs and the FLSA Collective were denied proper minimum wage because they were required to spend more than 20% of their time at work engaged in a non-tipped capacity.

275.    Plaintiffs and the FLSA Collective were denied proper minimum wage because they were required to pay for customer walkouts, uniforms, and other expenses for the benefit of Defendants.

276.    As a result of Defendants' policies and practices, they were not permitted to take a tip credit from the wages of Plaintiffs and the FLSA Collective.

277.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

278.    Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

279.    As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

## Count 2
### Failure to Pay Overtime Wages – Fair Labor Standards Act
### (On Behalf of Plaintiffs and the FLSA Collective)

280.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

281.    Plaintiffs and the FLSA Collective worked more than forty hours in one or more workweeks.

282.    When Plaintiffs and the FLSA Collective worked overtime hours, they were required to clock out, or they had their hours reduced manually by Defendants' managers, so their records would not indicate that they worked overtime hours.

283.    When Plaintiffs and the FLSA Collective's overtime hours were recorded by Defendants, they were paid at the wrong rate.

284.    As a result, Plaintiffs and the FLSA Collective were not properly compensated for hours worked in excess of 40 hour per week.

285.    By not paying Plaintiffs and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

286.    As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

**Count 3**
**Unlawful Deductions from Wages – South Carolina Payment of Wages Act**
**(On Behalf of the South Carolina Class Representatives and the South Carolina Class)**

287.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

288.    Defendants are an "employer" as defined by the SCPWA.

289.    Defendants employed the South Carolina Class Representatives and the South Carolina Class within the state of South Carolina.

290.    Money received by the South Carolina Class Representatives and the South Carolina Class directly as tips or from the tip pool were "wages" as defined by SCPWA, § 41-10-10(2).

36

291.     Defendants illegally deducted amounts from the wages of the South Carolina Class Representatives and the South Carolina Class without providing proper notice as required by S.C. Code Ann. § 41-10-30(A).

292.     Specifically, Defendants required the South Carolina Class Representatives and the South Carolina Class to pay approximately 3% of the sales they obtained out of their tips directly to Defendants.

293.     Defendants' unlawful deduction policy was instituted willfully.

294.     By making deductions from the tip income of the South Carolina Class Representatives and the South Carolina Class, Defendants have violated the SCPWA.

295.     As a result of Defendants' violations of the SCPWA, the South Carolina Class Representatives and the South Carolina Class are entitled to the unlawfully deducted tips, treble damages, attorneys' fees, costs, and injunctive relief.

### Count 4
**Failure to Pay Minimum Wages – Virginia Minimum Wage Act**
**(On Behalf of Pentecost and the Virginia Class)**

296.     Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

297.     Pentecost and the Virginia Class are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

298.     Pentecost and the Virginia Class were not given proper notice of the tip provisions of the FLSA.

299.    Pentecost and the Virginia Class were denied proper minimum wage because Defendants paid them $2.125 per hour, which is less than the permissible minimum wage minus a tip credit.

300.    Pentecost and the Virginia Class were denied proper minimum wage because they were required to share tips with parties and individuals who are not permitted to be included in a valid tip pool, including Defendants themselves, Defendants' bartenders, silverware rollers, bussers, and setters.

301.    Pentecost and the Virginia Class were denied proper minimum wage because they were required to spend more than 20% of their time at work engaged in a non-tipped capacity.

302.    Pentecost and the Virginia Class were denied proper minimum wage because they were required to pay for customer walkouts, uniforms, and other expenses for the benefit of Defendants.

303.    By the acts and conduct described above, Defendants willfully violated the provisions of the VMWA and disregarded the rights of Pentecost and the Virginia Class.

304.    Pentecost and the Virginia Class have been damaged by Defendants' willful failure to pay minimum wage as required by law.

305.    As a result of Defendants' willful violations, Pentecost and the Virginia Class are entitled to damages, including, but not limited to, unpaid wages, interest, costs, and attorneys' fees.

**Count 5**
**Failure to Pay Overtime Wages – Fair Labor Standards Act**
**(On Behalf of Zachary Tarry for his employment as a bartender / assistant manager)**

306.    Plaintiff Zachary Tarry restates and incorporates the foregoing allegations as if fully rewritten herein.

307.    Tarry worked more than forty hours in one or more workweeks during his time working as a bartender / assistant manager.

308.    Tarry did not clock in and out when he worked as a bartender / assistant manager.

309.    Tarry was instead paid a shift pay for each shift he worked. At first he was paid $50 per shift, and eventually he was paid $100 per shift. He was also given a percentage of the servers' tip-out, which was typically .0015% or .002% of sales.

310.    Tarry's paystubs indicate that he worked 80 hours over a two week period for the majority of time he worked as a bartender / assistant manager, but he regularly worked between 45 and 65 hours per week as a bartender /assistant manager.

311.    When Tarry worked 5 shifts per week, his paystubs indicate that he worked 40 hours per week. However, when Tarry worked less than 5 days per week, his pay was decreased.

312.    As a result, Tarry was not properly compensated for hours worked in excess of 40 hour per week.

313.    By not paying Tarry proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

314.    As a result of Defendants' willful violations, Tarry is entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

**WHEREFORE**, Plaintiffs Chris Gagliastre, Zachary Tarry, Olga Zayneeva, and Norman Pentecost pray for all of the following relief:

A.      Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B.      Unpaid minimum wages, overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA.

D.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure with respect to the South Carolina Class;

E.      Designation of the South Carolina Class Representatives as representatives of the South Carolina Class and counsel of record as Class Counsel;

F.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure with respect to the Virginia Class;

G.      Designation of Pentecost as representative of the Virginia Class and counsel of record as Class Counsel;

H.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA, SCPWA, and VMWA.

I.      An award of unlawfully deducted tips due under the SCPWA.

J.      An award of treble damages under the SCPWA.

K.      An award of unpaid wages under the VMWA.

40

L.      An award of interest under the VMWA.

M.      An award of prejudgment and post-judgment interest.

N.      An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

O.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Joshua L. Jewett
Joshua L. Jewett (VSB 76884)
Ervin Jewett, P.C.
2400 Dominion Tower
999 Waterside Drive
Norfolk, VA 23510
(757) 624-9323 (Phone)
(757) 624-8414 (Fax)
(jjewett@ervinjewett.com)

Andrew Biller (*pro hace vice admission pending*)
Trial Counsel
Andrew Kimble (*pro hace vice admission pending*)
Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
513-651-3700 (Phone)
513-665-0219 (Fax)
(abiller@msdlegal.com)
(akimble@msdlegal.com)

*Counsel for Plaintiffs*

**Jury Demand**

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.


/s/ Joshua Jewett