**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

CHRIS GAGLIASTRE, et al,,

              Plaintiffs,

v.

CAPTAIN GEORGE'S OF SOUTH
CAROLINA, LP, et al,,

              Defendants.

Case No. 2:17-cv-379-RAJ-RJK

**DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO ENFORCE
<u>SETTLEMENT AGREEMENT</u>**

COME NOW Defendants Captain George's of South Carolina, Inc., Captain George's of South Carolina, LP, Pitsilides Management, LLC, George Pitsilides, and Sharon B. Pitsilides (hereinafter, collectively, the "Defendants"),[1] by counsel, and as and for their Reply in Support of their Motion to Enforce Settlement Agreement, state as follows:

**<u>INTRODUCTION</u>**

In response to the Defendants' straightforward argument regarding the plain language of the settlement agreement the Plaintiffs presented to this Court for approval (hereinafter, the "Settlement Agreement"), Plaintiffs Zachary Tarry, Chris Gagliastre, and Olga Zayneeva (hereinafter, the "S.C. Plaintiffs") have offered up a vitriolic rant running for eighteen pages in

---

[1] Defendants Captain KDH, LLC, Lideslambous, Inc., and Pitsilambous, Inc. are not named as Defendants in the South Carolina suit that is the subject of the instant Motion. Accordingly, Plaintiffs Tarry, Gagliastre, and Zayneeva have not breached their covenants not to sue *those* defendants and they are not included in this Motion brought by the remaining Defendants. Nevertheless, and for the sake of simplicity, the individuals and entities named as defendants in the South Carolina suit will be referred to in this brief, collectively, as the "Defendants", with the understanding that Defendants Captain KDH, LLC, Lideslambous, Inc., and Pitsilambous, Inc. not included in that group.

which they make a series of unwarranted personal attacks on the Defendants and their counsel prior to finally getting around to addressing the substance of the Defendants' arguments. Once they did, however, the Plaintiffs basically side-step the merits of the Defendants' arguments, while ignoring the language of the Settlement Agreement's release provision and their own pleadings in the South Carolina suit.

The Plaintiffs' actual Opposition to the Defendants' Motion contains a single contention: that the Defendants are not entitled to recover their costs and fees. And in that they are correct.[2] Accordingly, the Defendants' request to recover their costs and fees contained in their pending Motion hereby is withdrawn.

What the Plaintiffs are *not* correct about, however, is the legal effect of the releases and covenants not sue to which they agreed in this Court. In their Memorandum in Support of their own Motion to Enforce (ECF No. 276),[3] the Plaintiffs cite extensively to the transcript of the fairness hearing held by this Court and to the mediation term sheet on which the follow-on

---

[2] In drafting their Motion to Enforce, the Defendants' counsel erroneously believed the Settlement Agreement to contain a blanket fee-shifting provision relating to its enforcement. It does not. Instead, Paragraph § 10.5 provides of that Agreement provides: "*Except as provided in § 8.2, no attorneys' fees and costs incurred with respect to the matters that are the subject of this Agreement, other than those already incorporated into the Settlement Payments, shall be payable by Settling Defendants and/or Additional Signatories.*" (emphasis added.) And it turns out that § 8.2 does not include any provision for attorneys' fees or costs. The undersigned both stand corrected and apologize for this error.

[3] The Plaintiffs incorporated their Motion to Enforce (ECF No. 275) into their Response to the Defendants' Motion (ECF No. 274). They did not, however, incorporate their Memorandum in Support of that Motion (ECF No. 276) into their Response, and the text of their Motion to Enforce states only that the Memorandum in Support is offered in support of the Plaintiffs' own Motion, not in opposition to the Defendants' Motion. (*See* ECF Nos. 274-275.) The foregoing notwithstanding, the Defendants will respond to the Plaintiffs' own Motion to Enforce (ECF No. 275)—including its blatantly improper request for sanctions under Rule 11—in the Defendants' forthcoming Brief in Opposition to the Plaintiffs' Motion, which shall be filed within the time permitted by the Local Rules of this Court. In the interim, this Reply brief will respond only to the Plaintiffs' arguments in opposition to the Defendants' Motion to Enforce (ECF No. 274).

2

Settlement Agreement was based.  In so doing, they repeatedly misconstrue Defendants' counsel's arguments and, more importantly, fail to acknowledge that—by its own terms, approved  by this Court—the Settlement Agreement supersedes all prior understandings between the parties.  The Settlement Agreement's plain language governs this dispute.  Under it, the S.C. Plaintiffs released their minimum wage, overtime, tip credit notice, tip misappropriation, silverware roller payment, and uniform reimbursement claims against the Defendants, and covenanted not maintain any suit against them for those claims or for any other claims related to or arising out of them.  Because they nevertheless are suing the Defendants for precisely those claims and related claims in South Carolina, the S.C. Plaintiffs are quite clearly in breach of the Settlement Agreement.

## **ARGUMENT**

The fundamental weakness of the Plaintiffs' opposition to the instant Motion is betrayed by their failure to address the plain language of the very agreement the Motion seeks to enforce. Instead, the Plaintiffs go shopping around to find other sources on which they can rely allegedly to support their contention that, after settling their minimum wage, overtime, tip credit notice, tip misappropriation, silverware roller payment, and uniform reimbursement claims in this Court, they somehow are entitled to sue the same Defendants for those very same claims again in South Carolina.  That is not how the law of settlements works.  In the Settlement Agreement, the Plaintiffs released and agreed not to sue the Defendants for the "Released Claims" or any other claims related to or arising out of them.  The claims the S.C. Plaintiffs have asserted in the South Carolina case manifestly are those very same claims, or, at the very least, are related to or arise out of them.  Hence, the S.C. Plaintiffs are legally bound to abandon those claims.

I.    **The Settlement Agreement's plain language defeats the Plaintiffs' arguments and requires the S.C. Plaintiffs to abandon their duplicative claims.**

A.    **The plain language of the Settlement Agreement controls; matters outside that document are irrelevant to the issues presented here.**

The Plaintiffs' opposition to the instant Motion largely is based on references to matters outside the four corners of the Settlement Agreement.  Those outside matters are and must remain irrelevant.  (Settlement Agreement § 10.18 ("This writing constitutes the full, complete and entire agreement between the Parties, and supersedes any and all prior or contemporaneous agreements, negotiations, offers and representations between the Parties, whether written or oral."); *Schuiling v. Harris*, 286 Va. 187, 192–93, 747 S.E.2d 833, 836 (2013) ("The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.") (quoting *Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)); *see also State Farm Mut. Auto. Ins. Co. v. Reynolds*, 676 F. Supp. 106, 107 (W.D. Va. 1987) (settlement agreement releasing all possible tortfeasors meant what it said and non-settling tortfeasor was accordingly released, despite plaintiff's contrary subjective intent).  The Plaintiffs convey a long narrative—citing no evidence—of the progress of negotiations that led to the settlement in this case.  (Pls.' Mem. at 5-6.)  They rely on the Memorandum of Understanding that the parties executed at the (confidential) mediation in this matter.  (*Id.* at 6-7.)  And yet that MOU expressly was superseded by the Settlement Agreement itself.  (*See* § 10.18.)  The Plaintiffs also rely—again, with no citation to any supporting evidence—on further negotiations over the Settlement Agreement itself and subsequent negotiations concerning the South Carolina suit.  (Pls.' Mem. at 7-9.)  Much of this amounts to nothing more than reporting to this Court the subjective perceptions of the Plaintiffs' counsel.  (*Id.*)   There is a reason why settlement negotiations are confidential and why matters expressed during them are inadmissible

as evidence.    The Plaintiffs reliance on them here is inappropriate, but—much more importantly—it is utterly without legal effect.  *See Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988) ("The public policy of favoring and encouraging settlement makes necessary the inadmissibility of settlement negotiations in order to foster frank discussions. . . . Attorneys must be afforded wide latitude in the conduct of settlement negotiations if the rule is to have any effect.").

The same is true of the Plaintiffs' paranoid musings about the Defendants' subjective intent.  They accuse the Defendants of having some nefarious purpose in waiting until after the Settlement Agreement was approved before seeking to enforce it.  (Pls.' Mem. at 12-13.) However, by its own terms, until it was approved by the Court the Settlement did not go into effect.  (Settlement Agreement §§ 9.1-9.2.)  There simply was nothing to enforce prior to this Court approving the Settlement Agreement.[4]

Similarly, the Plaintiffs accuse the Defendants of having "searched for new counsel to try to blow [the Settlement Agreement] up."  (*Id.* at 14.)  Even if one was to assume that to be true, whatever objections the Defendants may have had to the Settlement Agreement in the past are now irrelevant, because the Court approved that Agreement, thereby legally binding both sides to its terms.  Moreover, the irony of this particular argument by the Plaintiffs is fairly rich:  far from

---

[4] As it is, literally months before the Settlement Agreement was approved by *this* Court, the Defendants had filed in the South Carolina Court an Affirmative Defense that noted that the S.C. Plaintiffs had previously "settled, released, and waived all of the minimum wage, tip-pooling, and overtime claims asserted by them in the Complaint[.]"  *Tarry v. Captain George's of South Carolina, LP*, Case No. 4:19-cv-00800, Defs.' Answer & Aff. Defs., ECF No. 5, at 12 (Mar. 22, 2019) (Affirmative Defense No. 3.)  And, because *all* of the S.C. Plaintiffs' duplicative claims rely on FLSA minimum wage, overtime, or tip-pooling requirements, all of them are subject to this affirmative defense.  Hence, the Plaintiffs could hardly be surprised that the Defendants took that same position here.

I-1611385.1

attempting to "blow up" the Settlement Agreement, the Defendants' express purpose in their instant Motion is to *enforce* that very same Agreement.

It simply does not matter what the Defendants' counsel thought the Settlement Agreement said or on what grounds the Defendants opposed the Court's approval of the Settlement Agreement before it was approved.  What matters at this stage, now that the Settlement Agreement has been approved by this Court, is what the Settlement Agreement actually says.  And that is the issue presented by the instant Motion.[5]

This is why the Plaintiffs' contention that the Defendants seek "to blow up, walk away from, or rewrite the Settlement Agreement" (Pls.' Mem. at 1) is so strange.  Yes, the Defendants opposed this Court's approval of the Settlement Agreement.  But they lost that fight.  Now they are stuck with the terms of the Agreement approved by this Court.  This does not mean, however, that the Defendants somehow forfeited the right to enforce the Settlement Agreement, as written and approved.  The instant Motion is aimed explicitly at exactly the opposite of "setting aside an otherwise valid agreement" (*see* Pls.' Mem. at 14 (quoting *Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir. 1997)).  Instead, it seeks to *enforce* that agreement.  And, because the plain language of the Settlement Agreement controls, the issue presented by the Defendants' Motion is not what the Defendants' counsel said in negotiations or what the now-superseded Memorandum of Understanding provided.  Rather, the issue now before this Court is what is required by the language in the Settlement Agreement itself.

---

[5] An issue the Plaintiffs do not get around to arguing until Page 13 of their Memorandum.  They then stay on point for about two sentences, before turning to their utterly bizarre argument that the undersigned counsel have violated their duty of candor to this Court.  (*Id.* at 14-16.)  This specious and thoroughly repugnant argument will be addressed fully in the Defendants' Opposition to the Plaintiffs' Motion to Enforce.  As it is, it is not until Page 18 of the Plaintiffs' Memorandum that they finally turn to "the substance of Defendants' argument."

**B.    The Settlement Agreement's plain language prevents the Plaintiffs from maintaining the claims in their South Carolina suit based on the same conduct as the claims settled in this Court.**

In opposing the Defendants' Motion, the Plaintiffs curiously omit any mention of the language in the Settlement Agreement's actual *release* provisions.  Instead, the only language in the Settlement Agreement to which they refer is that document's definition of "Released Claims".  (Pls.' Mem. at 1 (citing only § 7.1), 15 (same).)  But the Defendants' argument is not based solely on that provision.  Article 7 of the Settlement Agreement has *two* sections: Section 7.1 provides the "Definition of Released Claims", including the carve-out provision on which the Plaintiffs exclusively rely.  Section 7.2, however, provides the actual "Release and Covenant Provided by Plaintiffs".  If Section 7.2 simply stated that the Plaintiffs release and covenant not to sue the Defendants for the "Released Claims", then the Plaintiffs' exclusive focus on Section 7.1 certainly would make sense.  But Section 7.2 goes further.  It provides that the Plaintiffs released and promised not to maintain "any action *arising from or relating to* the Released Claims." (emphasis added.)

The Plaintiffs simply ignored this argument in the Defendants' Brief in Support.  And by so doing, they have conceded it.  *East West, LLC v. Rahman*, 873 F. Supp. 2d 721, 728 (E.D. Va. 2012) (by failing to address opposing party's argument, non-movant concedes it).  It literally is undisputed that the Plaintiffs' releases and covenants not to sue extend not only to the "Released Claims" themselves, but also to any claims arising from or relating to them.  This is particularly important because, under Virginia law, the broad language employed in the Settlement Agreement's release provision (Section 7.2) establishes a strong presumption that any claim between the settling parties is included within its scope.  *See*, *e.g.*, *Ferguson v. Stokes*, 287 Va. 446, 450, 756 S.E.2d 455, 457 (2014) (construing similarly broad release language); *see also Williams v. Prof'l Transp. Inc.*, 294 F.3d 607, 613 (4th Cir. 2002) (settlement agreement

7

requiring party to dismiss its claim for overcharging for transportation services also barred assertion of subsequent claim based on same facts).

The Plaintiffs did not merely release some claims, but rather *all* claims *arising out of or relating to* the Released Claims.  *See Convey Compliance Sys., Inc. v. 1099 Pro, Inc.*, 443 F.3d 327, 332 (4th Cir. 2006) (release of claims "arising out of" actions prior to settlement barred subsequent complaint, even though predicate facts were unknown at time of settlement); *see also Al Shimari v. CACI Premier Tech., Inc.*, 368 F. Supp. 3d 935, 973 (E.D. Va. 2019) (construing federal common law) (settlement of all claims "arising out of or related to" encompasses claims with any relationship to settled claims).   Indeed, in the Recitals portion of the Settlement Agreement (which was incorporated by reference into the substance of the agreement itself), the parties represented that it was their intent "to resolve the disputes between them fully and finally through this Agreement and on the terms and conditions set forth herein."    (Settlement Agreement at 1; *see also id.* § 10.11 (the "Recitals" are binding on the parties).)  The use of this broad language, and the similarly broad language in both Sections 7.1 and 7.2,  demonstrates that the parties intended a nearly global settlement of all possible claims between them, with only a very narrow class of claims explicitly excluded.  Thus, because the Plaintiffs did not contest this point in their Memorandum and because the Settlement Agreement's plain language dictates it, the scope of claims released by the Settlement Agreement is broader than the definition of "Released Claims".  It includes *any* claims *arising out of or relating to* them.

> **C.    The S.C. Plaintiffs' duplicative claims arise out of or are related to the "Released Claims".  Thus, they are subject to the Plaintiffs' releases and covenants not to sue under the Settlement Agreement.**

Contrary to the Plaintiffs' assertion, it *does* matter that the S.C. Plaintiffs' claims in the South Carolina suit are functionally identical to the claims they settled in this Court.  The

8

Plaintiffs contend that "even if the South Carolina claims were based on the exact same facts as the FLSA claims in this case, the Agreement does not release the claims." (Pls.' Mem. at 18.) Their sole support for this extraordinary assertion is the fact that the South Carolina suit was pending at the time the Settlement Agreement was negotiated. (*Id.*) But the Settlement Agreement does not merely prohibit the S.C. Plaintiffs from commencing a new suit. It also expressly prohibits them from "*maintaining* any action arising from or relating to the Released Claims." (Settlement Agreement § 7.2 (emphasis added).) As noted above, the Defendants raised this argument in their Brief in Support, and the Plaintiffs simply ignored it. To be sure, the Plaintiffs failed to cite Section 7.2 of the Settlement Agreement even once in their Memorandum. Hence, the Plaintiffs have conceded that argument too.

Moreover, the Plaintiffs' argument that they may settle their minimum wage, overtime, tip credit notice, tip misappropriation, silverware roller payment, and uniform reimbursement claims here and then continue to pursue nearly identical claims elsewhere is contrary to the basic law and purpose of settlement agreements. Fundamentally, by agreeing to dismiss those claims with prejudice and to release them entirely, the Plaintiffs, including the S.C. Plaintiffs, have extinguished all rights to any other recovery based on those same alleged actions by the Defendants. *See Williams v. Prof'l Transp. Inc.*, 294 F.3d 607, 613 (4th Cir. 2002) (filing of second case based on same facts was a breach of settlement agreement).

The near identity between the S.C. Plaintiffs' claims and the claims settled in this case is apparent from even the most cursory review. Yet the Plaintiffs manage to spend five pages describing the S.C. Plaintiffs' claims in the South Carolina suit without a single citation to their complaint or their proposed amendment to it. (Pls.' Mem. at 19-24.) There is good reason for that. In their South Carolina Complaint, the S.C. Plaintiffs expressly state that the Defendants

subjected the S.C. Plaintiffs to the same "policies, practices, and procedures relating to payment of *minimum wages*, *overtime wages*, *tip pooling*, and deductions." (ECF No. 272-1 ¶¶ 20, 25, 34 5 [hereinafter, the S.C. Plaintiffs' "Complaint"].) They allege that the "Defendants paid tipped wage employees *below minimum wage.*" (*Id.* ¶ 65 (emphasis added).) They allege that "Defendants' policies caused tipped wage employees to be paid less than minimum wage and overtime." (*Id.* ¶ 87.) They allege that the Defendants promised them tip credit minimum wage but paid them less than that amount, paid them less than the federal mandatory overtime rate, and took deductions that dropped their rates of pay below the federal minimum wage. (S.C. Pl's Compl. ¶¶ 3 (S.C. Plaintiffs were "paid less than the minimum wage as an hourly rate on account of Defendants deducting a tip credit from their wages"), 64 (S.C. Plaintiffs and putative class are "current and former servers or other employees paid minimum wage minus a tip credit employed by Defendants"), 65 (alleging that the S.C. Plaintiffs were paid "below minimum wage"), 66-67 (Defendants promised to pay tip credit minimum wage, but paid a half penny less), 87 ("Defendants' policies caused tipped wage employees to be paid less than minimum wage and overtime."), 89 (class include those who "have been paid minimum wage minus a tip credit"), 111 ("Plaintiffs were not paid proper minimum wage, [or] proper overtime wages, . . . ").)

Thus, assuming that South Carolina law even provides a remedy for these alleged violations,[6] the S.C. Plaintiffs would be required to prove the exact same facts they would have had to prove in this Court to establish their settled FLSA claims. As such, those claims manifestly arise out of or relate to the Released Claims, such that they are subject to the Settlement Agreement's Section 7.2. Accordingly, the S.C. Plaintiffs' maintenance of their suit

---

[6] And it does not, *see infra.*

in South Carolina based on their duplicative claims stands in obvious breach of the Settlement Agreement, and this Court should grant the Defendants' instant Motion.

**D.    The S.C. Plaintiffs' duplicative claims do not arise out of South Carolina Law.  Hence, they are "Released Claims" under the Settlement Agreement.**

The Plaintiffs seem to think they may recover a second time for the very same claims they settled in this suit, based on identical facts, simply because they claim that the conduct alleged in the case they settled in this Court also violates South Carolina law.   But *because* each of the S.C. Plaintiffs' duplicative claims relies on the same facts as the claims settled here, they do not arise under South Carolina law.   Fundamentally, the broad nature of the Settlement Agreement in general means that the specific carve-out provision in Section 7.1 must be read narrowly, as excluding from the definition of "Released Claims" only those claims *actually arising* under South Carolina law, rather than claims merely *alleged* under South Carolina law. *See Al Shimari*, 368 F. Supp. 3d at 973 (construing settlement agreement release carve out narrowly in light of broad nature of settlement generally).   The duplicative claims the S.C. Plaintiffs have asserted do not arise under South Carolina law.   They are, therefore, *included* in the definition of "Released Claims".   That is so because South Carolina law is preempted wherever, and to the extent that, the FLSA provides a remedy.   Having expressly relied on the FLSA as the basis for the claims they settled in this Court, the Plaintiffs cannot simply "rebrand" those very same claims and then recover for them again in South Carolina.

The Plaintiffs argue that they need not prove a violation of the FLSA to show an improper, no-notice deduction for each of their claims.  (Pls.' Mem. at 20-23.)  But the FLSA *does* preempt these claims to the extent that they seek recovery of minimum wage and mandatory overtime payments, for the reason that the SCPWA's contract-based enforcement mechanism cannot reach claims related to payments already required by a pre-existing legal

duty. *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 192 & n.11 (4th Cir. 2007); *see also Meller v. Wings Over Spartanburg, LLC*, Case No. 2:15-cv-2094, 2016 WL 1089382, at *4 (D.S.C. Mar. 21, 2016) (FLSA preempts SCPWA claims based on failure to pay minimum wage and overtime). Thus, because the S.C. Plaintiffs' claims are premised on a failure to pay them FLSA minimum or overtime wages, or on a violation of tip-pooling or tip credit requirements under the FLSA, they are preempted by the FLSA and are *not* claims arising under South Carolina law. *See, e.g., Pecora v. Big M Casino, Inc.*, Case No. 4:18-cv-01422, 2019 WL 295839, at *4 (D.S.C. Jan. 23, 2019) (SCPWA claims based on *different* facts not preempted).

In *Anderson v. Sara Lee Corp.*, the plaintiffs contended that their North Carolina state law wage claims were not preempted by the FLSA because the defendant affirmatively promised to pay them wages due under the FLSA (*i.e.*, minimum wage and overtime at the rate of 1.5 times their regular rate). 508 F.3d 181, 192 & n.11 (4th Cir. 2007). The court rejected this argument because the defendant-employer already was obligated by law to pay federal minimum wage and overtime, and "the state claims essentially require the same proof as claims asserted under the FLSA itself." *Id.* And, just like the case here, the plaintiffs in *Anderson* sought to rely on state law remedies that were inconsistent with the FLSA's remedial scheme. *Id.* at 193.

Here, the Plaintiffs argue that "[t]he FLSA allows Plaintiffs to recover unpaid minimum wages whereas South Carolina allows Plaintiffs to recover withheld tips and wages owed but not paid." (Pls.' Mem, at 18 (referring to the S.C. Plaintiffs' "two largest claims").) In making this argument, the Plaintiffs appear to be attempting to assert that the S.C. Plaintiffs' claims are "gap wages" claims: *i.e.,* claims based on the failure to pay a promised amount *in excess* of the federal minimum wage. The trouble with this is that the S.C. Plaintiffs' Complaint does not assert a gap wages claim. Instead, it alleges that the S.C. Plaintiffs were owed (but not paid) FLSA minimum

I-1611385.1

wage and overtime.  (*See supra* Part I.C. (citing the Complaints' extensive reliance on the FLSA as the source of the S.C. Plaintiffs' rights).)

The S.C. Plaintiffs' proposed amended complaint is even more clearly premised on the Defendants' alleged FLSA violations, directly tying even their improper deduction claim to the federal minimum wage:

> 131.    Plaintiffs were not paid all wages due by Defendants as required by S.C. Code Ann. § 40-10-40(D).
>
> 132.    Plaintiffs were not paid all wages due because ***Plaintiffs were not paid proper minimum wage, proper overtime wages***, incurred expenses for the benefit of Defendants, and they had improper deductions taken from their wages and tips, ***that caused their wages to drop below minimum wage***.

(ECF No. 272-2, Proposed Amended Compl. ¶¶ 131-32 (emphasis added); *see also id.* ¶¶ 20, 66-68, 106 (alleging that the Defendants promised to pay the S.C. Plaintiffs' minimum wage and the federal mandatory overtime rate, but failed to do so) ¶ 137 (alleging that the S.C. Plaintiffs are entitled, *inter alia*, to "payment of full minimum wage")).)  In other words, the S.C. Plaintiffs allege that the Defendants promised to pay the S.C. Plaintiffs FLSA minimum wage, but didn't; that they promised to pay the S.C. Plaintiffs FLSA overtime, but didn't; and that they took deductions that resulted in the S.C. Plaintiffs being paid less than FLSA minimum wage.  Thus, the S.C. Plaintiffs' claims are just recycled FLSA claims, now mislabeled as claims under South Carolina law.  Accordingly, the S.C. Plaintiffs' duplicative claims are subject to the Settlement Agreement and the S.C. Plaintiffs' maintenance of them is in breach of that agreement.

## II.    The Plaintiffs' defenses to enforcement of the Settlement Agreement are meritless.

For all their pious rhetoric about preserving the Settlement Agreement, what the Plaintiffs actually are asking this Court to do is to reform it for them.  The Plaintiffs argue (without any citation or reference to Section 7.2) that, if the Court follows the plain language of the Settlement

Agreement, it will render the carve-out provision of Section 7.1 meaningless.  They argue that South Carolina law "apparently" would require approval of the settlement of their duplicative claims, without providing any explanation of why this is so or what affect it should have on their clear agreement not to pursue those claims any further.  And they argue that the Defendants should not be allowed to rely on the plain language of the Settlement Agreement based on what the Plaintiffs think the Defendants' counsel said about it before it was approved by the Court. None of these defenses have any weight.[7]

### A.    The carve-out preserves the Plaintiffs' wage notice claim, but it does not guarantee its success.

The Plaintiffs pretend that the Defendants have argued that the Settlement Agreement's "carve-out for the *Tarry* claims is meaningless".  (Pls.' Mem. at 17.)  This misrepresents the Defendants' position in two important ways:  first, the Defendants' position is that the Settlement Agreement does not carve out the "*Tarry* claims".  That is because the Settlement Agreement carves out *only* those claims pending in the South Carolina case "arising under the laws of the State of South Carolina" or claims that had been dismissed from this suit.  (Settlement Agreement § 7.1.)  As discussed above, the Plaintiffs' minimum wage, overtime, tip credit notice, tip misappropriation, silverware roller payment, and uniform reimbursement claims do not fall within either of these two categories.  None of them arise under the laws of South Carolina and none were dismissed from this suit.  Rather, all of them were *resolved* in this suit.

---

[7] The Plaintiffs also appear to hint at an argument that the Settlement Agreement *they asked this Court to approve* is ambiguous and should be construed against the Defendants because the Defendants' former counsel drafted it.  (*See* Pls.' Mem. at 15.)  But, if that is their intent, it runs counter to the Settlement Agreement's plain language.  After all, the Plaintiffs agreed "that each [party] has participated in the drafting of the terms of this Agreement, and . . . that, notwithstanding any legal doctrine to the contrary, should this Agreement require interpretation, no rule of construction or interpretation requiring or suggesting that this Agreement should be construed against any drafter shall apply."  (Settlement Agreement § 10.8.)

Second, the Defendants do not contend that the carve-out is meaningless, only that it is not quite so expansive as the Plaintiffs want it to be.  The Plaintiffs asserted a single South Carolina state law claim in this suit, and that claim was dismissed without prejudice.  The carve-out provision in the Settlement Agreement preserves that one claim.  And because that claim is preserved, the carve-out is not meaningless.[8]  That the S.C. Plaintiffs instead chose to pursue and maintain claims directly and entirely duplicative of the FLSA claims they settled in this Court is not the Defendants' fault, but the fault of the S.C. Plaintiffs themselves.  If the S.C. Plaintiffs had moved to amend their Complaint to remove those settled claims and to assert *only* the South Carolina notice claim dismissed without prejudice by this Court instead, they would have been in compliance with the Settlement Agreement.  Section 7.1's carve-out provision would have permitted that, and the Defendants would not need the Court's assistance in enforcing it.  Fundamentally, because *Section 7.2* (which the Plaintiffs just ignore) is not meaningless, the Court's enforcement of the plain language of that section would not render meaningless the carve-out provision of Section 7.1.

### B. South Carolina law does not require approval of the SCPWA settlements or exempt the S.C. Plaintiffs from the covenants to which they agreed.

The Plaintiffs contend that "South Carolina's state law *apparently* requires court approval to release claims[.]"  (Pls.' Mem. at 16 (emphasis added).)  It is not clear why the Plaintiffs only say that this "apparently" is so, but it may be because they have no authority to support that

---

[8] Though this does not mean the preserved claim necessarily is meritorious.  The Plaintiffs complain that the Defendants have pointed out that the S.C. Plaintiffs already have recovered for any conceivable damages they could have suffered under their failure-to-notify claim.  (Pls.' Mem. at 18, 20.)  But no one guaranteed the S.C. Plaintiffs that they would be able to recover on that claim.  It is their burden to prove cognizable damages under it.

position.[9]  The statute they cite does not state that court approval of settlement agreements is required.  It states, in its entirety: "No provision of this chapter may be contravened or set aside by a private agreement."  S.C. Code § 41-10-100.  The Plaintiffs have not cited any cases saying that court approval of settlements is required.  Nor have they explained why this Court should hold that to be so.  (Pls.' Mem. at 16.)  As it is, the undersigned have been unable to locate any case in which a court interpreting South Carolina law has found that settlements of SCPWA claims must be approved by a court.

More importantly, even if court approval of such a settlement *was* required, this would not relieve the S.C. Plaintiffs of their obligations under the Settlement Agreement's Section 7.2. That is so because the duplicative claims they asserted and maintained in the South Carolina suit are *not* SCPWA claims. Rather, they are relabeled FLSA claims for which this Court already approved a settlement.  Second, even if separate approval of their duplicative claims was required merely by virtue of the S.C. Plaintiffs having labeled them as SCPWA claims, that would not mean that the Plaintiffs did not agree to the terms in the Settlement Agreement.  (*See* Pls. Mem. at 9 (quoting the Court's admonition that it expected the parties to abide by their agreement).)  Just as this Court approved the Settlement Agreement over the Defendants' objection based on its finding that their prior counsels' participation in its drafting was sufficient to bind them, so too are the Plaintiffs bound by their agreement to release and not to maintain any suit against the Defendants for claims arising out of or relating to the Released Claims— even those brought under state law.  The Plaintiffs cannot argue that the Settlement Agreement is binding on the Defendants but void where they find it inconvenient for the Plaintiffs.

---

[9] Later, in a footnote, the Plaintiffs more forcefully contend that § 41-10-100 "forbids private settlements of South Carolina claims".  (Pls.' Mem. at 27, n.12.)  They still have offered no authority that interprets § 41-10-100 in this way or any argument explaining why this Court evidently should be the first in the land to do so.

This Court approved the Settlement Agreement in its entirety, including the releases and covenants not to sue contained in its Section 7.2. The plain language of that section prevents the Plaintiffs from maintaining any suit based on the same facts and alleged violations as the settled claims, regardless of the statute on which they are based. The Plaintiffs' argument amounts to a contention that the Court was required to proceed line-by-line through the Settlement Agreement and explain the scope and extent of its approval of each individual provision. The Plaintiffs agreed to settle their minimum wage, overtime, tip credit notice, tip misappropriation, silverware roller payment, and uniform reimbursement claims that still were part of this suit, and to have them dismissed *with* prejudice. The Court approved that agreement. The Plaintiffs' claims have indeed been dismissed *with* prejudice. This means that these Plaintiffs cannot maintain those claims under a different theory in another jurisdiction.

C.     **The Plaintiffs' *tu quoque* arguments hint at waiver or estoppel, but fail to establish that the Defendants have waived or are estopped from asserting their rights under the Settlement Agreement.**

The Plaintiffs' extended musings about their counsel's impression of the Defendants' counsel's statements amounts to a contention that, because the Defendants opposed the approval of the Settlement Agreement (which the Court will recall never was signed by or on behalf of the Defendants), they cannot now rely on its terms to remedy the S.C. Plaintiffs' breach of it.[10] While dramatic, this argument lacks any legal support. Nothing in any of the Plaintiffs' long,

---

[10] The Plaintiffs say it is "shocking" that the Defendants asserted in their papers in the District of South Carolina that their position in this Court was that the Settlement Agreement was not an accurate reflection of the parties' agreement. (Pls.' Mem. at 12.) Yet the Plaintiffs have cited nothing to indicate why they find that so "shocking". The Defendants opposed approval of the Settlement Agreement based on their argument that it did not accurately reflect the terms of the Memorandum of Understanding. They lost that argument. Now, in seeking to bind the Defendants to a losing argument, the Plaintiffs are trying to have their cake and eat it too. Having won the argument to approve the Settlement Agreement, the Plaintiffs also are now stuck with what it says . . . even if it turns out there are parts of it that they don't like either.

17

largely citation-free narrative comes close to presenting any evidence that the Defendants intended to waive their right to rely on the plain language of Settlement Agreement Section 7.2. And, under the Settlement Agreement, such a waiver must be specific, written, and signed by the Defendants. (Settlement Agreement § 10.16); *see also Vienna Metro LLC v. Pulte Home Corp.*, 786 F. Supp. 2d 1076, 1083 (E.D. Va. 2011) (enforcing written waiver clause).

Nor does the Plaintiffs' narrative come close to establishing that the Defendants are estopped from asserting their rights. To do so, the Plaintiffs would have had to establish, by clear and convincing evidence, that the Defendants knowingly misrepresented their own position on the meaning of the Settlement Agreement with the intent to deceive the Plaintiffs and induce the Plaintiffs to rely on this false reading of the document to their detriment. *See Vienna Metro LLC*, 786 F. Supp. 2d at 1083 (discussing elements of estoppel). Nothing in the Plaintiffs' narrative demonstrates any of these elements.

The Defendants objected to the Settlement Agreement, but the Court approved it anyway. The Plaintiffs dramatically contend that the Defendants somehow tricked them into advocating in favor of the Settlement Agreement or tricked the Court into approving it. (Pls.' Mem. at 27 & n.12.) But even if the Defendants' present position *was* inconsistent with their prior positions (and it is not), it simply would not matter. The law looks to what a contract says, not to what the lawyers argued it *should* say. Here, the Settlement Agreement says that the Plaintiffs released any claims arising out of or relating to the Released Claims, not just those claims within the definition of "Released Claims".

If the Plaintiffs' releases under this language are broader than they thought they were, they need to look to their own counsel for an explanation. As the Agreement states:

> Each Party acknowledges that it has entered into this Agreement of his, her or its own free will, after opportunity for full investigation and consideration of the

18

> uncertainties, risks and costs attendant to continued and further Litigation, and that it has not acted under duress, undue influence, threat or coercion in entering into this Agreement. Each Party acknowledges that it has had the benefit of advice of counsel of its own choosing regarding this Agreement.

(Settlement Agreement § 10.8); *see also Bridgestone/Firestone, Inc. v. Prince William Square Assocs.*, 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995) ("The law will not insert by construction, for the benefit of a party, an exception or condition which the parties omitted from their contract by design or neglect."). At the end of the day, it is the Plaintiffs who evidently are dissatisfied with and seek to alter the terms of the Settlement Agreement they asked this Court to approve. Confronted with the plain meaning of that document's language, they now cry foul and ask to be relieved of the obligations by which they agreed to be bound. No one tricked these Plaintiffs. They had plenty of opportunity to read, digest, evaluate, and edit the Settlement Agreement before they presented it to this Court. And now they are bound by its terms.

## CONCLUSION

Despite their inflammatory rhetoric, Plaintiffs Tarry, Gagliastre, and Zayneeva have utterly failed to contend with one of the two central points in the Defendants' Motion: that, even *if* the S.C. Plaintiffs' duplicative claims arose under South Carolina law, those claims nevertheless are subject to the Plaintiffs' releases and covenants not to sue because Section 7.2 of the Settlement Agreement extends beyond the scope of the "Released Claims". It also includes "any claims arising out of or relating to" them. The Plaintiffs did not even bother to address this argument, let alone refute it. Accordingly, the Court should grant the instant Motion (and deny the Plaintiffs' pending cross-motion as moot) on this basis alone.

The Plaintiffs' have also failed to overcome the second key point of the Defendants' Motion. Because the actual allegations in their Complaint do not assert claims independent of the FLSA's minimum wage, overtime, tip-pooling, or tip credit requirements, the S.C. Plaintiffs'

duplicative claims are *not* claims *arising under South Carolina law*. They are just mislabeled FLSA claims instead.  Despite their efforts to twist these allegations, the Plaintiffs (who do not once cite their own Complaint) simply cannot alter them via their brief.  Those allegations expressly rely on the Defendants' alleged failure to pay the S.C. Plaintiffs tip-credit minimum wage, failure to pay FLSA-mandated overtime, and alleged improper deductions that brought the S.C. Plaintiffs' wages below FLSA minimum wage.  Not only are they clearly FLSA claims, but they are the very same FLSA claims these Plaintiffs already settled in this Court.

Accordingly, the Court should grant the instant Motion and order the S.C. Plaintiffs to comply with the terms of the Settlement Agreement.


WHEREFORE, Defendants Captain George's of South Carolina, LP; Captain George's of South Carolina, Inc.; Pitsilides Management, LLC; George Pitsilides, and Sharon Pitsilides ask the Court to grant the instant Motion; enter an Order directing Plaintiffs Tarry, Gagliastre, and Zayneeva to dismiss from their South Carolina suit all claims arising out of or related to the Defendants' alleged failure to pay them minimum wage or overtime, failure to provide them a proper tip credit notice, misappropriation of tips, requirement to contribute to payment for silverware roller services, and requirement to purchase their first uniform shirts; and award to the Defendants such other and further relief as the Court deems just.


Dated:  June 24, 2019                              Respectfully submitted,


                                   By:   /s/ Christopher A. Abel
                                         Christopher A. Abel (VSB No. 31821)
                                         William A. M. Burke (VSB No. 89044)
                                         Counsel for Defendants

Willcox & Savage, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
Telephone:  757.628.5500
Facsimile:   757.628.5566
cabel@wilsav.com
wburke@wilsav.com

I-1611385.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 24, 2019, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all counsel.

By:  /s/ Christopher A. Abel
Christopher A. Abel (VSB No. 31821)
William A. M. Burke (VSB No. 89044)
Counsel for Defendants
Willcox & Savage, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
Telephone:  757.628.5500
Facsimile:   757.628.5566
cabel@wilsav.com
wburke@wilsav.com

I-1611385.1