IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| CHRIS GAGLIASTRE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CAPTAIN GEORGE'S OF SOUTH CAROLINA, LP, et al.,<br><br>    Defendants. | Case No. 2:17-cv-379-RAJ-RJK |

**DEFENDANTS' BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION TO ENFORCE
SETTLEMENT AGREEMENT**

COME NOW Defendants Captain George's of South Carolina, Inc., Captain George's of South Carolina, LP, Captain KDH, LLC, Lideslambous, Inc., Pitsilambous, Inc., Pitsilides Management, LLC, George Pitsilides, and Sharon B. Pitsilides (hereinafter, collectively, the "Defendants"), by counsel, and as and for their Brief in Opposition to Plaintiffs' Motion to Enforce Settlement Agreement (ECF No. 275), state as follows:

**INTRODUCTION**

The fundamental problem with the Plaintiffs' Motion to Enforce the Settlement Agreement is that they have utterly failed to identify *any* conduct by the Defendants that breaches an obligation under the Settlement Agreement in this case. In their Memorandum in Support (ECF No. 276), the Plaintiffs complain at length about what they regard as improper conduct by the Defendants and their counsel, but—significantly—they never bother to connect any of it to an enforceable obligation arising out of the Settlement Agreement itself. Instead, the Plaintiffs contend that by the Defendants opposing the Motion to Amend filed by Plaintiffs Zachary Tarry, Chris Gagliastre, and Olga Zayneeva (hereinafter, the "S.C. Plaintiffs") in their

suit now pending in the United States District Court for the District of South Carolina (hereinafter, the "South Carolina Suit"), the Defendants somehow have "act[ed] contrary to the Agreement's release language". (Pls.' Mem. at 13.) Indeed, they argue that, because the Defendants' position in the South Carolina Suit is legally incorrect (at least in the opinion of the Plaintiffs),[1] the Defendants' taking that position somehow constitutes a breach of the Settlement Agreement. But the Plaintiffs have failed to identify a single provision in that Agreement requiring the Defendants to take or refrain from taking any particular position in the South Carolina Suit. That is so because no such provisions are there to be found. Hence, there simply is no basis for the Plaintiffs to contend that the Defendants have breached the Settlement Agreement merely by asking this Court to enforce the Defendants' interpretation of its terms.

Additionally, the Plaintiffs' attempt to seek the imposition of sanctions without filing an appropriate motion is just as baseless. Make no mistake: the parties clearly disagree about how the Settlement Agreement is to be interpreted. But there is nothing nefarious or improper about the Defendants asserting their own position on that issue, no matter how much the Plaintiffs may disagree with it.[2] Thus, even if it was properly before the Court—and it manifestly is not—the Plaintiffs' request for sanctions should be denied. Their attempt to work an end-run around

---

[1] Because the Plaintiffs contend that the Defendants' position "contravenes the Agreement's plain language". *Id.*

[2] The extent to which the Defendants' counsel are incensed at the casual manner in which the authors of the Plaintiffs' instant pleadings proceed to attack both their integrity and their motives cannot be minimized. Nevertheless, as officers of this Court mindful of their own obligation to uphold an appropriate degree of civility and professionalism in these proceedings, the undersigned will abstain from responding in kind or otherwise engaging in the kind unwarranted mud-slinging that permeates their opponents' recent submissions to this tribunal. Instead, the Defendants' counsel trust that the Court will afford them an opportunity personally to defend their honor in open court at the hearing on the parties' respective Motions to Enforce the Settlement Agreement.

Federal Rule of Civil Procedure 11 cannot relieve the Plaintiffs of the mandatory requirements set out in that Rule. As it is, the Plaintiffs attempt to by-pass Rule 11's requirements by asking this Court to advise them if they should file a motion under that Rule. But they already have. There can be no doubt that the Plaintiffs' instant Motion not only asks for the imposition of sanctions, but it does so emphatically and repeatedly. Of course, it also does so in a manner that clearly is procedurally defective, in addition to being wholly without merit. Hence, it must be denied. Finally, under Rule 11(c)(2), this Court should award the Defendants their expenses (including their attorney fees) incurred in responding to the Plaintiffs' entirely improper motion for sanctions.

## ARGUMENT

**I.    The Settlement Agreement does not require the Defendants to take or refrain from taking *any* particular position in the South Carolina Suit.**

The Defendants have asserted, both in the South Carolina Suit and here, that the S.C. Plaintiffs' claims are mostly—if not entirely—subject to the release and covenant not to sue provisions of the Settlement Agreement. For their part, the Plaintiffs contend that the mere assertion of the Defendants' position in opposition to the S.C. Plaintiffs' Motion to Amend their Complaint in the South Carolina Suit is "contrary to the Agreement's release language". (Pls.' Mem. at 13.) Yet, tellingly, the Plaintiffs do not actually *cite* the Settlement Agreement's "release language" at any point in their Memorandum. Neither do they point to any other language or provision in that Agreement obligating the Defendants to take a position that comports with the Plaintiffs' own view of the Settlement Agreement's terms, or to refrain from taking a position with which the Plaintiffs disagree. Likewise, they have cited no case to support their position.

I-1612308.1

As it is, the Settlement Agreement's own language conclusively refutes the Plaintiffs' argument. Precisely because the Plaintiffs do not cite the Agreement in connection with their contention that the Defendants have breached it, it is not clear to which portion of the Settlement Agreement they are referring when the call out its "release language". However, Article 7 of the Agreement is titled "Releases & Covenants not to Sue", so the Plaintiffs probably are referring to something in that article. (Settlement Agreement at 4-5, ECF No. 250-1.) Article 7 itself contains two sections: Section 7.1 "Definition of Released Claims", and Section 7.2 "Release and Covenant Provided by Plaintiffs". (*Id.*)

Section 7.1 of the Agreement contains no mandatory language at all. As its title suggests, it simply provides the definition of "the term 'Released Claims'". (*Id.*) Section 7.2 imposes certain obligations on the *Plaintiffs* (as its title suggests), but none on the Defendants. (*Id.* at 5.) Indeed, the *only* obligations imposed on the Defendants under the Settlement Agreement are the following:

- jointly with the Plaintiffs, to seek the transfer of *Smith v. Captain George's of South Carolina, LP*, Case No. 4:18-cv-02409, to this Court, and its consolidation with this case (*id.* §§ 2.1-2.2);

- to establish and distribute a "Regular Wage Settlement Fund", an "Overtime Wage Settlement Fund", and a "Server Tool & Equipment Fund", (*id.* §§ 3.1-5.2); and

- jointly with the Plaintiffs, to file a consent dismissal order dismissing this suit with prejudice, (*id.* § 6.1).

Significantly, the Plaintiffs have not suggested that the Defendants have breached any of these obligations. Indeed, the settlement payment obligations are not yet due, and each of the case administration obligations have already been satisfied.

Given the foregoing, the Plaintiffs' request for a declaratory order that George and Sharon Pitsilides are now jointly and severally liable must be denied. The Plaintiffs have not even identified—let alone established—a breach of the Settlement Agreement by the Defendants. Hence, there is nothing for the Plaintiffs to enforce. They certainly have not been "obliged to enforce" any of the three identified obligations binding the Defendants in this case. Instead, the Plaintiffs' instant Motion to Enforce is nothing more than an overheated expression of their disagreement with the arguments made in support of *the Defendants'* Motion to Enforce. Of course nothing in the Settlement Agreement requires the Defendants to agree with the Plaintiffs' interpretation of its terms. Neither is there any provision of the Settlement Agreement that prohibits the Defendants asserting their own interpretation of those same terms. And, because of that, the Plaintiffs' Motion to Enforce must be denied.

II. **The Plaintiffs' request for sanctions is utterly without merit and is procedurally defective as well.**

   A. **The Plaintiffs' sanctions motion is without substantive merit: it seeks sanctions against the Defendants and their counsel for disagreeing with the Plaintiffs.**

The Defendants did not breach their duty of candor to the Court and their Motion to Enforce is anything but frivolous. The Defendants' counsel discussed in detail with the Court the Defendants' objections to the Settlement Agreement at the March 4, 2019, Fairness Hearing. The Court overruled those objections, except to the extent that it permitted the Defendants to oppose the amount of the Plaintiffs' counsel's fee petition. As it is, the Defendants' Motion to Enforce is based on the plain language of the Settlement Agreement itself. The Plaintiffs are free to disagree with the Defendants' view of the meaning of that language, but such disagreement

5

alone cannot render the Defendants' position frivolous, let alone "beyond moral reprehensibility".[3]

The Plaintiffs base their contention that the Defendants violated their duty of candor to this Court on a footnote in the Defendants' Brief in Opposition to the S.C. Plaintiffs' Motion to Amend in the South Carolina Suit. (Pls.' Mem. at 15 (citing *Tarry v. Captain George's of South Carolina, LP*, Case No. 4:19-cv-800, Defs.' Br. in Opp. to Pls.' Mot. for Leave to Amend, ECF No. 32 at 2, n.1 (D.S.C. June 3, 2019); *see also id.* at 12 (same).) In that footnote, the Defendants stated the following:

> The Defendants did not move to dismiss the Plaintiffs' Complaint on this basis [the S.C. Plaintiffs' releases and covenants not to sue] because the Agreement had not yet been approved by the Eastern District of Virginia. The Defendants took the position there that the Agreement was *not* an accurate reflection of the parties' agreement to settle the Plaintiffs' federal claims. However the federal court in Virginia disagreed and held that the Agreement was an accurate memorialization of the parties' agreement, and approved it. Accordingly, regardless of the Defendants' prior positions regarding the Agreement, that document now sets forth the judicially-endorsed terms by which the parties to this litigation agreed to settle and release the Plaintiffs' federal wage claims.

*Tarry*, Defs.' Br. in Opp. to Pls.' Mot. for Leave to Amend, ECF No. 32 at 2, n.1 (emphasis in original). The Plaintiffs contend that this statement was inconsistent with the Defendants' arguments at the Fairness Hearing conducted by this Court and that, if the Defendants believed that the Settlement Agreement was not an accurate reflection of the parties' agreement, they breached their duty of candor by failing to so advise the Court. (Pls.' Mem. at 15-16.)

---

[3] One truly has to journey through the proverbial looking glass in trying to understand the logic behind the Plaintiffs' thesis in bringing their instant Motion. To be sure, the Plaintiffs contend that the Defendants' approaching this Court via appropriate motion practice seeking to interpret and enforce the Settlement Agreement (rather than the Defendants engaging in unilateral interpretation or self-help enforcement on their own) somehow stands in breach of the very agreement the Defendants are seeking to enforce. Or, stated another way, the Plaintiffs aggressively maintain that it violates the Agreement to rely on it what it says—and it somehow is even more improper to ask this Court to interpret those terms about which the parties disagree.

6

I-1612308.1

The Plaintiffs' argument is deeply flawed. In making it, the Plaintiffs deploy a subtle shift, attempting to imply that the Defendants have argued the existence of an error in the Settlement Agreement's provision prohibiting the S.C. Plaintiffs from maintaining duplicative claims in the South Carolina Suit. They contend that "Defendants cannot sit on information important to the Court's analysis, wait until the Court ratifies the Agreement, and then claim one of the Agreement's fundamental aspects is in error." (Pls. Mem. at 16.) While the Plaintiffs avoid specifically identifying the "fundamental aspect" of the Agreement they say the Defendants belatedly claimed to be in error, they plainly imply that this "error" the language that provides the basis of the Defendants' opposition to the S.C. Plaintiffs' Motion to Amend in the South Carolina Suit, as well as the Defendants' Motion to Enforce in this Court. They are wrong.

The footnote quoted above is a reference to the grounds on which the Defendants opposed approval of the Settlement Agreement. Those grounds were and are distinct from the terms of the Agreement on which the Defendants rely in seeking to enforce it now. Contrary to the Plaintiffs' contention, the transcript of the Fairness Hearing clearly demonstrates that the Defendants' description in the quoted footnote is accurate: the Defendants' counsel argued that the Defendants had not signed the Settlement Agreement, and that they believed that it should have addressed a credit for "top-up" payments and should not have included the language at § 9.3 stating that the Defendants agreed not to oppose the Plaintiffs' attorney fee application. (*See* Hr'g Tr. at 11:15-18:23 (Mar. 4, 2019), Ex. 3 to Pls.' Mem., ECF No. 33-4 (identifying the reasons why Defendants believed that the Settlement Agreement was not an accurate reflection of the parties' actual agreement and discussing them in detail with the Court).) Moreover, just as is described in the Defendants' footnote, this Court overruled the Defendants' objections to the

Settlement Agreement, (*id.* at 17:4-14, 18:24-19:3), and ultimately approved it, such that the Agreement now is binding on both parties, despite the Defendants' (overruled) objections.

The Plaintiffs also contend that the Defendants' counsel's representations in the Fairness Hearing about the Settlement Agreement's impact on the South Carolina Suit are inconsistent with the Defendants' arguments made in opposing the S.C. Plaintiffs' Motion to Amend in the South Carolina Suit and in support of the Defendants' Motion to Enforce in this Court. (Pls.' Mem. at 26.) The straw man they employ in support of that argument is not at all subtle. Indeed, the Plaintiffs pretend that the Defendants' current position is that "the Agreement's *Tarry* carve-out is meaningless and all claims have been released". (*Id.*) Yet that manifestly is *not* the Defendants' position.

The Defendants' actual position is that, under the plain language of the Settlement Agreement, the S.C. Plaintiffs cannot maintain their *duplicative* claims for two reasons. First, Section 7.1's carve out from the definition of "Released Claims" is narrow, encompassing only those claims arising under South Carolina law *and* currently pending in the South Carolina Suit, claims that plainly do not include the S.C. Plaintiffs' merely rebranding their settled FLSA claims. Second, the Settlement Agreement's releases are broader than the foregoing definition, encompassing all claims "arising out of or relating to" the "Released Claims", rather than just the Released Claims themselves. Owing to that second provision, the S.C. Plaintiffs' *duplicative* claims are doubly barred. The Defendants' position is *not* that the carve-out in Settlement Agreement Section 7.1 is "meaningless". Rather they contend it permits the S.C. Plaintiffs to maintain only the South Carolina "notice" claim dismissed by this Court.[4]

---

[4] As this Court will recall, originally the Plaintiffs in the Virginia action had included in this action state law notice claims arising solely under the law of South Carolina. Not long before the parties met to mediate the Virginia case, this Court dismissed those unique South Carolina

8

Unfortunately, much of the Plaintiffs' argument is built on their false characterization of the Defendants' position. They contend that the Defendants made "statements to this Court that *Tarry* claims were not released, [and] . . . now ask this Court to void the Agreement's express carve-out." (Pls.' Mem. at 13-14.) That just is not so. First, the Defendants have not asked the Court to void *anything* in the Settlement Agreement. The Plaintiffs' contention to the contrary, (like their specious argument that the Defendants seek to "blow up" the Settlement Agreement) is a gross misrepresentation. Indeed, it is the Defendants who first came to this Court explicitly seeking to *enforce* the Settlement Agreement as written.

Second, the Defendants did not represent to the Court anything about the effect of the language of the *Settlement Agreement* on the S.C. Plaintiffs' claims: the representations from the Fairness Hearing on which the Plaintiffs so heavily rely in their Memorandum principally concern the language in the parties' Memorandum of Understanding reached at the conclusion of their mediation. That MOU ultimately was superseded by the Settlement Agreement. And precisely because the Settlement Agreement superseded the MOU as soon as the Settlement Agreement became effective, the Defendants' past interpretations of the MOU's own terms are irrelevant at this point. (Settlement Agreement § 10.18 ("This writing constitutes the full, complete and entire agreement between the Parties, and supersedes any and all prior or contemporaneous agreements, negotiations, offers and representations between the Parties, whether written or oral.").) For example, the Plaintiffs highlight the Defendants' counsel's

---

claims. It did so without prejudice, so that the Plaintiffs could still pursue them, if they chose, in South Carolina. The parties then proceeded to settle their case at mediation, specifically carving out of that settlement the South Carolina state claims dismissed by this Court. And while the Settlement Agreement permits them to pursue *those claims* in South Carolina, nothing in the Settlement Agreement compels the Defendants to agree with the merits of those claims nor to consent to the S.C. Plaintiffs pursuing *all of the claims* currently contained in the South Carolina Suit as drafted by the S.C. Plaintiffs, either now or as they propose in their Amended Complaint.

9

I-1612308.1

statement that "the state court cases in South Carolina would be addressed separately outside this agreement." (*Id.* at 9.) That statement is in reference to the language in Paragraph 3 of the MOU, not to the language in the Settlement Agreement. (Hr'g Tr. at 9:1-15.) The Plaintiffs also highlight the Defendants' counsel saying that the Defendants would have to "litigate a lot of the same issues in state court". (Pls.' Mem. at 25.) That statement also was made in the context of the very same discussion of the MOU's language, cited above. (Hr'g Tr. at 9:16-10:5.)

Moreover, the Defendants' counsel's discussion at the Fairness Hearing of the general contours of the parties' agreement was not inconsistent with the Defendants' position that the Settlement Agreement does not permit the S.C. Plaintiffs to reassert the very same claims they settled in this Court. The Settlement Agreement excluded the S.C. Plaintiffs' South Carolina *state law notice claim*, which was dismissed by this Court and will have to be litigated separately. And, in resolving the South Carolina notice claim dismissed by this Court, a lot of the very same issues that were litigated in this Virginia case still will have to be litigated in South Carolina.[5] The defendants and plaintiffs essentially are the same, the restaurant is the same, the time period is the same, the documents and witnesses will mostly be the same, and the Plaintiffs concede that there is at least some overlap in the damages between the two cases.[6] The Defendants' counsel did not say at the Fairness Hearing that the Defendants would have to re-

---

[5] It is not clear exactly which issues will have to be re-litigated, though, as the Defendants have been unable to determine from the S.C. Plaintiffs' Complaint (or their Proposed Amended Complaint) whether and to what extent it actually asserts any South Carolina law claims independent of the FLSA claims that were the subject of the Settlement Agreement. Although the S.C. Plaintiffs were entitled to assert (or maintain) a South Carolina *state law notice* claim in the South Carolina Suit, it is not clear that they actually have done so.

[6] The Plaintiffs complain that the Defendants have pointed out that the S.C. Plaintiffs already have recovered any conceivable damages they could have suffered under their state law notice claims. (Pls.' Mem. at 18, 20.) But no one guaranteed to the S.C. Plaintiffs that they would be able to recover on that claim. It is their burden to come up with legally cognizable damages for it.

litigate *all* of the same issues in South Carolina. Nor did he say that the Defendants would have re-litigate the *exact same claims* that were resolved by the Settlement Agreement.[7] If he had said so, he would have been wrong—just as wrong as the Plaintiffs are now when they contend that the Settlement Agreement they asked this Court to approve essentially resolved nothing at all.[8]

The Plaintiffs also highlighted the Defendants' counsel's statement that he expected the S.C. Plaintiffs' settlement demand in the South Carolina Suit to exceed $1 Million. (Pls.' Mem. at 10.) But counsel's impression of what the S.C. Plaintiffs' *demand* ultimately might be is not at all the same admitting that the S.C. Plaintiffs were *entitled to recover* that much (or anything at all) on their state law claim. Similarly, the Plaintiffs highlight the Defendants' counsel's statement (in the same discussion with the Court) that the South Carolina Case involves "in some cases, the very same plaintiffs are seeking now in a state court action on the same facts down in South Carolina." (Pls.' Mem. at 10.) But that manifestly is not a representation that the duplicative, rebranded FLSA claims in the South Carolina Suit are not subject to the releases the Plaintiffs provided via the Settlement Agreement. It is, instead, an explanation of the same point addressed above: that a lot of the same issues will be addressed, between the same parties, in litigating the South Carolina notice claim that this Court dismissed late last year. (*See* Hr'g Tr. at 10:21-22 (clarifying that "there is South Carolina state law at work").) In fact, the Court itself summarized the state of affairs best when it stated its impression that "there would still be some state court actions in South Carolina[.]" (Hr'g Tr. at 10:12-13.) The Defendants' counsel confirmed this impression, and that confirmation was consistent with the Defendants' position that the Settlement Agreement permits the Plaintiffs to maintain unique South Carolina state law

---

[7] Although, as it turns out, that is exactly what the S.C. Plaintiffs are trying to do.

[8] In fact, it resolved exactly what it says it resolved: all claims "arising out of or relating to the Released Claims", including all of the S.C. Plaintiffs' duplicative and recycled FLSA claims.

11

claims . . . not rebranded or relabeled FLSA claims or claims that are entirely duplicative of them.

The Plaintiffs ask "[w]hy would the parties carve out the *Tarry* claims if the parties meant for that carve-out to be meaningless?" (Pls.' Mem. at 13-14.) But that question is based on the same false premise addressed above. The parties did *not* carve out "the *Tarry* claims" from the Settlement Agreement. They carved out the South Carolina *state law claims* pending in the South Carolina Suit from the Settlement Agreement's definition of "Released Claims", but also provided for broader releases of claims "arising out of relating to" those claims. The carve-out is not meaningless. It clearly preserved the S.C. Plaintiffs' right to pursue the one South Carolina state law claim that this Court dismissed.

Given the foregoing, nothing about the Defendants' position is inconsistent or improper. And even if there was room to interpret it otherwise, nothing the Plaintiffs have alleged would bring this situation anywhere close to the kind of misconduct addressed in the one case they cite on this issue. In *United States v. Shaffer Equipment Co.*, an action by the government to recover environmental clean-up costs, the Fourth Circuit affirmed the dismissal of the government's case as a sanction for a sustained pattern of deceit by its attorneys. 11 F.3d 450, 452 (4th Cir. 1993) (noting trial court's finding that the on-scene commander for the clean-up "misrepresented his academic achievements and credentials in this and in other cases and that the government's attorneys wrongfully obstructed the defendants' efforts to root out the discrepancies and failed to reveal them once they learned of them."). After a two-day evidentiary hearing, the trial court determined that the government's counsel was aware of the problems with the on-scene commander, which included both civil and criminal investigations against him, but nevertheless

deliberately concealed this information and continued to base their case on the on-scene commander's suspect findings. *Id.* at 454.[9]

Nothing of this sort even is alleged by the Plaintiffs here, let alone supported by admissible or credible evidence. Instead, the Plaintiffs register their disagreement with the Defendants' position and contend that the Defendants' had a duty to inform the Court in advance that the Plaintiffs' duplicative claims in the South Carolina Suit are subject to the releases and covenants not to sue in the Settlement Agreement. But, again, because the Defendants do *not* take the position that the Settlement Agreement is void,[10] they were under no obligation to volunteer to the Court their interpretation of its terms. The Plaintiffs certainly have not presented any basis for finding such an obligation to exist.

Instead, the Plaintiffs' argument appears to be born out of disappointment arising from their belated appreciation of the clear import of the language contained in the Settlement Agreement they presented to this Court. Evidently, the *Plaintiffs* feel like the plain language of Section 7.2 would render Section 7.1's carve out meaningless. That may well be because they now feel that they got something less than what they wanted out of the bargain. To be sure, the Plaintiffs apparently thought that the Settlement Agreement would permit them to collect over $2.4 Million from the Defendants here in Virginia and then recover all over again from those same Defendants for the very same claims in South Carolina. They seem to believe that the

---

[9] Similarly, the unpublished opinion the Plaintiffs attached as an exhibit to their Memorandum plainly is inapposite here. None of the misconduct identified in that case even is alleged to have occurred in this instance.

[10] Except to the extent that it actually would permit the Plaintiffs to maintain a second suit against the Defendants for the same alleged conduct and recover the same damages for it all over again. Such an agreement would be legally void for want of consideration. However, because that is *not* what the Settlement Agreement says, it is not void—nor do the Defendants contend that it is.

I-1612308.1

Defendants should have warned them that the Settlement Agreement does not permit them to do that.

The Plaintiffs were represented by (numerous) counsel, counsel who participated in drafting the Settlement Agreement. If the Plaintiffs are disappointed in the content of that Agreement, they should look to their own counsel—not to the Defendants or *their* counsel—for an explanation. Regardless, the Plaintiffs' subjective hope for a duplicative windfall is irrelevant to the inquiry before this Court. Nor does disappointment in not achieving that goal provide any justification for leveling lurid allegations of deceit and other misconduct against the Defendants and their counsel.

The Plaintiffs repeatedly imply that they were surprised by the Defendants' position on the covenants and releases contained in the Settlement Agreement and they complain about the timing of the Defendants' asserting it. But, as early as March of this year the Defendants had raised as an affirmative defense in the South Carolina Suit the Settlement Agreement's prohibiting the S.C. Plaintiffs from maintaining their duplicative claims in that action: "the Plaintiffs and all members of the opt-in class in the FLSA action currently pending in the United States District Court for the Eastern District of Virginia have settled, released, and waived all of the minimum wage, tip-pooling, and overtime claims asserted by them in the Complaint." *Tarry*, Case No. 4:19-cv-00800, Defs.' Answer & Aff. Defenses, ECF No. 5 at 12 (Mar. 22, 2019). And the Defendants asserted that same position again in April of this year, when they filed their District of South Carolina Local Civil Rule 26.03 Report. *Tarry*, Case No. 4:19-cv-00800, ECF No. 13 at 5 (Apr. 26, 2019). Moreover, because the Settlement Agreement did not become effective until this Court approved it, there was nothing for the Defendants to enforce in connection with the S. C. Plaintiffs' releases prior to that approval taking place.

14

Stripped to its essence, the Plaintiffs' sanctions motion amounts to nothing more than an effort to have this Court punish the Defendants and their counsel for having the audacity to disagree with the Plaintiffs and their counsel and for the Defendants seeking judicial enforcement of a term in the Settlement Agreement to which the Plaintiffs now wish they had not agreed. Their Motion is wholly without merit and should be denied.

### B. The Plaintiffs' sanctions motion must be denied because the Plaintiffs failed to follow any of the procedural requirements for such a motion.

The Plaintiffs ask this Court to issue a show cause order to the Defendants under Rule 11(C)(3), or "if the Court prefers, Plaintiffs can file a Motion for Sanctions under Rule 11." (Pls.' Mem. at 26.) But the Plaintiffs already have filed a motion seeking sanctions. In their Motion to Enforce, the Plaintiffs ask for "an Order sanctioning Defendants and/or their counsel for their frivolous and vexatious conduct and/or their breach of their duty of candor." (ECF No. 275; *see also* Pls.' Mem. at 27 (asking the Court to "sanction Defendants and/or their counsel for what appears to be frivolous conduct and/or an a breach of their duty of candor.")). In so doing, the Plaintiffs have violated every one of Rule 11's procedural requirements.

Rule 11(c) permits a party to file a motion for sanctions when its opponent violates the requirements of Rule 11(b). But, in doing so, the movant must comply with Rule 11's mandatory procedural requirements for a sanctions motion:

> A motion for sanctions *must be made separately from any other motion* and must describe the specific conduct that allegedly violates Rule 11(b). The motion *must be served under Rule 5*, but it *must not be filed* or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Fed. R. Civ. P. 11(c)(2) (emphasis added). These requirements are not optional: a Rule 11 sanctions motion must be denied if the movant fails to adhere to the proper procedure. *Allie v.*

*Whole Foods Mkt. Grp., Inc.*, 746 F. Supp. 2d 773, 778 (E.D. Va. 2010) ("'[I]t is clear from the language of the rule that it imposes mandatory obligations upon the party seeking sanctions, so failure to comply with the procedural requirements precludes the imposition of the requested sanctions.'") (quoting *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004) (*en banc*)).

The Plaintiffs filed their sanctions motion in conjunction with their Motion to Enforce. Hence, they have failed to file it "separately from any other motion". The Plaintiffs did not serve a copy of their sanctions motion on the Defendants in advance of filing it with the Court, in violation of Rule 11's requirement that they do so. And, although the Plaintiffs' counsel sent the Defendants' counsel a letter warning that the Plaintiffs "may seek sanctions" against the Defendants or their counsel (which plainly did not comply with Rule 11's requirement to serve a copy of the *motion* describing "the specific conduct that allegedly violated Rule 11(b)"), they nevertheless filed their sanctions motion just thirteen days later. Accordingly, the Plaintiffs' sanctions motion has been filed in violation of Rule 11(c)(2). It must, therefore, be denied.

Finally, because the Plaintiffs' sanctions motion is without merit and was filed in violation of all of Rule 11's procedural requirements, the Court should not only deny it, but also award to the Defendants their costs and reasonable attorney fees incurred in opposing it. Rule 11 provides that, in ruling on a motion for sanctions, "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." R. 11(c)(2). An award to the Defendants of their expenses is warranted in this instance, for all of the reasons set forth above.

I-1612308.1

## CONCLUSION

The Plaintiffs claim that, in opposing the S.C. Plaintiffs' Motion to Amend in the South Carolina Suit, the Defendants have breached the Settlement Agreement. But they have not identified any basis in the Settlement Agreement for this contention. Nothing in that Agreement prohibits the Defendants from opposing the Motion to Amend, nor does anything in the Settlement Agreement require the Defendants to refrain from asserting their own interpretation of that document's plain language. The Defendants could not have breached the Settlement Agreement simply by asserting an argument based on its terms (or by seeking to have this Court construe those terms about which the parties disagree). Accordingly, the Plaintiffs' Motion to Enforce must be denied.

Likewise, the improper sanctions motion embedded in the Plaintiffs' Motion to Enforce also must be denied. Aside from rank speculation, suspicion, and vitriol, it offers nothing that would even remotely support the imposition of sanctions. Instead, it appears to be based on a misleading contortion of the undersigned counsel's arguments and representations, some of which were made in confidential settlement negotiations. The Defendants put their concerns about the Settlement Agreement before the Court at the Fairness Hearing, where they were discussed in detail. Notwithstanding those concerns, this Court approved the Settlement Agreement, and it is now binding on all parties. The Defendants' position regarding that Agreement's effect on the South Carolina Suit is based on its plain language, and the Plaintiffs have offered nothing to show that such an argument is impermissible. At the same time, the Plaintiffs have utterly failed to comply with any of the mandatory procedural requirements of Rule 11. Thus, their sanctions motion could not be granted even if it were meritorious—which it plainly is not. Instead, precisely because the Plaintiffs' sanctions motion is meritless and was

filed in violation of Rule 11, this Court should deny it and then award to the Defendants their costs and attorneys' fees incurred in having to respond to it.

WHEREFORE, Defendants Captain George's of South Carolina, Inc., Captain George's of South Carolina, LP, Captain KDH, LLC, Lideslambous, Inc., Pitsilambous, Inc., Pitsilides Management, LLC, George Pitsilides, and Sharon B. Pitsilides ask the Court to deny the Plaintiffs' Motion to Enforce, award them their fees and costs incurred in opposing the improperly filed sanctions motion included in that same Motion, and award to the Defendants such other and further relief as this Court deems just.

Dated: July 1, 2019                               Respectfully submitted,

 

By:   /s/ Christopher A. Abel
     Christopher A. Abel (VSB No. 31821)
     William A. M. Burke (VSB No. 89044)
     Counsel for Defendants
     Willcox & Savage, P.C.
     440 Monticello Avenue, Suite 2200
     Norfolk, Virginia 23510
     Telephone:  757.628.5500
     Facsimile:   757.628.5566
     cabel@wilsav.com
     wburke@wilsav.com

I-1612308.1

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2019, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all counsel.

By: /s/ Christopher A. Abel
Christopher A. Abel (VSB No. 31821)
William A. M. Burke (VSB No. 89044)
Counsel for Defendants
Willcox & Savage, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
Telephone: 757.628.5500
Facsimile: 757.628.5566
cabel@wilsav.com
wburke@wilsav.com

I-1612308.1