IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| Chris Gagliastre, *et al.*, | |
| *On behalf of themselves and others similarly situated*, | Case No. 2:17-cv-379 |
| Plaintiffs, | Judge Raymond A. Jackson |
| v. | Magistrate Judge Robert J. Krask |
| Captain George's of South Carolina, LP, *et al.*, | |
| Defendants. | |

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ENFORCE

## Table of Contents

1.  Introduction ........................................................................................................................... 1

2.  Defendants now agree that Plaintiffs' South Carolina "notice" claim may proceed in *Tarry*. 2

3.  The Agreement's "plain language" preserves Plaintiffs' SCPWA claims. ............................ 3

4.  Plaintiffs' Motion requires only that the Court determine whether Plaintiffs asserted South Carolina law claims. The Court need not delve into the contours or merits of those claims. . 7

5.  As part of the Court's continuing jurisdiction to enforce the Agreement, the Court has the power to enforce interpret the Agreement and make appropriate orders. .............................. 9

6.  Defendants breached their duty of candor to the Court, warranting sanctions .................... 12

    6.1.  Plaintiffs' request for sanctions is procedurally proper. ................................................ 13

    6.2.  Defendants' breached their duty of candor to the Court ................................................ 14

    6.3.  Sanctions are necessary to stop this type of conduct. .................................................... 18

7.  Conclusion ........................................................................................................................... 19

Plaintiffs' Reply in Support of Motion to Enforce

### 1. Introduction

To put this situation in simple terms, Defendants agreed to a settlement at mediation, Defendants told the Court they were bound by that promise, and, now, Defendants want more. This circumstance requires Plaintiffs to ask this Court to enforce the parties' Agreement.

Immediately after the Court approved the Agreement, Defendants argued that Plaintiffs could not maintain any South Carolina Payment of Wages claims asserted in *Tarry v. Captain George's*.

Now, Defendants acknowledge that at least some of Plaintiffs' SCPWA claims should be permitted to go forward, which is a step in the right direction. But Defendants still maintain that some of Plaintiffs' SCPWA claims have been released by the Agreement, because, according to Defendants, the Agreement releases more than the parties' Memorandum of Understanding.

This is a disturbing claim to make because it means that, despite the Court's central role in evaluating and approving FLSA settlements, Defendants decided to never mention to the Court that they believed the Agreement's release terms did not reflect the MOU's release terms—even after the Court asked Defendants to point to any issues they had with the Agreement. In any event, under their new theory, Defendants ask the Court to define the merits of Plaintiffs' SCPWA claims and declare that some aspects of those claims have been released by the Agreement.

The reality is that the Agreement and the MOU are in harmony. Neither one releases any of Plaintiffs' claims in the *Tarry* case. For that reason, the Court should enforce the Agreement and order Defendants to withdraw their Opposition in *Tarry*.

1

Moreover, given Defendants' seemingly admitted lack of candor—Defendants say that "they were under no obligation to volunteer to the Court their interpretation of [the Agreement's] terms" (Doc. 279, PAGEID 4304)—the Court should sanction Defendants.

### 2. Defendants now agree that Plaintiffs' South Carolina "notice" claim may proceed in *Tarry*.

Defendants' position on the Release has evolved from their Opposition to Plaintiffs' Motion to Amend in *Tarry* to their most recent filing here. Thus, it is probably best to start with what is apparently no longer in dispute.

The basis for Plaintiffs' Motion to Enforce is that Defendants filed a brief in *Tarry* that argues the Agreement here released *all* of Plaintiffs' claims in *Tarry*: "Because the releases the Plaintiffs provided in the Agreement cover all of the claims presented in their proposed First Amended Complaint, those claims are barred as a matter of law, and their proposed amendment would be futile." *See Tarry v. Captain George's of South Carolina, LP, et al.*, No. 4:19-cv-800, Doc. 32, Defendants' Opposition to Plaintiffs' Motion for Leave to Amend Complaint, Doc. 32, p. 2.[1] Now, however, Defendants concede that the Agreement's *Tarry* carve-out "permits the S.C. Plaintiffs to maintain only the South Carolina 'notice' claim dismissed by this Court." Response, Doc. 279, PAGEID 4298.

Defendants are vague in defining the "notice claim," but Defendants seem to link this claim to Plaintiffs' cause of action based on Defendants retaining and/or diverting employee tip money without providing South Carolina's mandatory notice. *See* Response, Doc. 279, PAGEID

---

[1] In *Tarry*, although Defendants acknowledged that this Court dismissed the South Carolina tip-notice claim, Defendants did not appear to argue such a claim was preserved. Moreover, Defendants argued that Plaintiffs entire proposed Amended Complaint raised no claims that were not subject to the Agreement's Release. *See, e.g.*, *Tarry*, Opposition, p. 7.

4298 (referencing the Motion to Decline Supplemental Jurisdiction briefing). In the supplemental

jurisdiction briefing, Defendants claimed (incorrectly, but relevant here):

> Plaintiffs' complaint alleges one, and only one, violation of South Carolina state law: it asserts that the Myrtle Beach Restaurant's "tip out" for servers violates a general state law providing for written notice, "at the time of hiring," of "the deductions which will be made from the wages," S.C. Code § 41-10-30(A).

*See* Defendants' Memo in Support, Doc. 183, PAGEID 2710–11. Defendants now concede this

claim may proceed in *Tarry*. Doc. 279, PAGEID 4298.[2]

What appears to still be disputed is whether any of Plaintiffs' other SCPWA claims in

*Tarry* have been released, whether Plaintiffs can enforce the Agreement, and whether the Court

should sanction Defendants for their lack of candor to the Court. Plaintiffs will address each issue

in turn.

### 3. The Agreement's "plain language" preserves Plaintiffs' SCPWA claims.

Defendants argue that the Agreement's release is broad and, conversely, that the carve-

outs are "narrow." *See* Doc. 279, PAGEID 4298. This, Defendants argue, makes the

Agreement's Release different than the MOU's language that "This agreement does <u>not</u> affect

South Carolina state court action." *See id.* at PAGEID 4299–4300 (arguing that their statements

at the Fairness Hearing were about only the MOU's release, not the Agreement's Release).

Unlike the MOU, according to Defendants, the *Agreement's* "plain language" actually releases

some or all of the *Tarry* SCPWA claims. To arrive at their conclusion, Defendants omit important

words from the Release and then misinterpret the Agreement's Section 7.2 to distort any

---

[2] Both Plaintiffs' original Complaint and Proposed Amended Complaint include this claim. *See Tarry* Complaint, ¶¶69-76, 84, 86, 103(a) and (b), 107–114; *and see Tarry* Proposed Amended Complaint, ¶¶71–82, 100–105, 123(a)–(c), 128–137.

reasonable meaning. A step-by-step analysis shows that the Agreement is consistent with the MOU, and that no claim in *Tarry* is released or "affected."

First, the Agreement relates only to the "Litigation" (capitalized), which refers to the "Virginia Litigation" and the "South Carolina Litigation."[3] *See* Doc. 276-1, Settlement Agreement, Recitals. The Agreement defines those terms in its first paragraph. Those two cases raise only FLSA claims. The *Tarry* case, asserting SCPWA claims, was also pending when the Agreement was drafted, but was not included in the definition of "Litigation."

Second, the Release's baseline definition of released claims (*i.e.*, the Release before carve-outs) is very narrow. The Release limits itself to the following types of claims: "underpayment of tipped minimum wages, the underpayment of overtime wages, the under-reimbursement of tools and uniforms, the operation of an unlawful tip pool, and the failure to provide tip credit notice." Agreement, §7.1. Even if this was the *only* release language at issue, Plaintiffs' South Carolina claims survive because they are based on Defendants' failure to:

- o provide notice about deductions (regardless of whether the deductions violate the FLSA) (Doc. 276, §§3.3.2 – 3.3.5),

- o pay the wage Defendants promised (again, regardless of whether the under- or non-payment is a minimum wage or other FLSA violation) (*id.* at § 3.3.6), and

- o pay promised or required wages by South Carolina's payday due date (*id.* at § 3.3.7).

The *Tarry* claims have bases independent of the FLSA and the facts cited in the Release.

Third, the Release is narrower still because even when a claim is of one of the above types,

---

[3] "South Carolina Litigation" refers to the case *Smith v. Captain George's of South Carolina*, No. 4:18-cv-2409, now consolidated with this lawsuit. *See* Agreement, first introductory paragraph containing definitions. It does not refer to *Tarry*.

in order to be released, the claim must meet one of two additional requirements. The claim must either have been "asserted in the Virginia Litigation and remain pending as of January 1, 2019" or "could have been asserted in the Virginia Litigation." *See* Agreement, §7.1. Defendants omit this language through much of their argument.

As of the Court's Order declining jurisdiction over Plaintiffs' state law claims, no South Carolina law claim either was or could have been asserted in this lawsuit. *See* Memorandum Order Dismissing Plaintiffs' South Carolina Claims without Prejudice, Doc. 190 (Oct. 4, 2018). Defendants claim that the Court declined jurisdiction over only the South Carolina notice claim involving tip deductions. *See Tarry* Opposition, Doc. 32, pp. 5–6. This is not so. The Court dismissed *all* of Plaintiffs' state law claims. *See* Doc. 190, PAGEID 2800 ("this Court declines to exercise supplement jurisdiction over Plaintiffs' state law claims"). The Court knew Plaintiffs asserted multiple South Carolina law claims because Plaintiffs defined their claims to include the panoply of Defendants' deductions from Plaintiffs wages and tips (*i.e.*, not just deductions from tips). *See* Plaintiffs' Memorandum in Opposition to Motion to Dismiss South Carolina Claims, Doc. 188, PAGEID 2777–78. Moreover, the Court denied Plaintiffs' request to modify the case schedule to accommodate Rule 23 procedures for Plaintiffs' state law claims because no state law claims remained after the Court declined jurisdiction over the claims. *See* Doc. 192.

Fourth, even if the baseline release language left any questions, the Release expressly excludes from its definition any South Carolina state law claims asserted in *Tarry*. *See* Agreement, §7.1. Defendants concede that all of the claims they allege are released now were already asserted in *Tarry* prior to the Agreement's drafting. *See* Defendants' Motion to Enforce Settlement Agreement, Doc. 272, PAGEID 4065-4066. As Plaintiffs detailed, the claims are based on

5

different facts and law than the FLSA claims (*i.e.*, the South Carolina law claims involve a failure to give notice, pay a promised wage, or timely pay wages when due). Doc. 276, PAGEID 4151-57. But, even if the claims *were* based on the exact same facts as the FLSA claims, they are preserved under the *Tarry* exclusion because that exclusion has no exception based on a claim's facts. If the claim arises under South Carolina law and was asserted in *Tarry*, it is preserved.

Fifth, the Release also preserves any claim that the Court dismissed, whether voluntarily or not. Agreement, §7.1. Again, this includes all South Carolina claims dismissed in the Court's October 4, 2018 Order (Doc. 190), even if not already asserted in *Tarry*.

In the face of the Agreement's plain language repeatedly and in various ways preserving all of Plaintiffs' South Carolina law claims, Defendants can only point to one provision, Section 7.2. *See* Doc. 279, PAGEID 4298, 4302. Defendants claim that provision is as broad as to include all of Plaintiffs' claims in *Tarry* except, as Defendants now admit, a claim based on Defendants taking and diverting Plaintiffs' tip money without written notice. *Id.* at 4302. Section 7.2 does not support Defendants' position.

In order to be subject to Section 7.2's prohibition against maintaining an action, the action must meet one of two requirements, neither of which is met here. The action must be one either (1) arising from the Released Claims or (2) relating to the Released Claims. Agreement,§7.2. By definition, *Tarry* does not arise from any Released Claim because *Tarry* only asserts claims under South Carolina law. *See Tarry* Proposed First Amended Complaint, Doc. 30-2. Defendants only possible argument is that *Tarry* is an action "relating to the Released Claims."

To confuse the matter, Defendants consistently switch the Agreement's word "action" with Defendants' word "claim" in their description of the Release. *See* Doc. 279, PAGEID 4298,

6

4301 n. 8, 4302, *see also* Doc. 272, PAGEID 4072, 4076, *see also* Doc. 278, PAGEID 4271. This switch, combined with Defendants' use of the words "related to" rather than the Agreement's "relating to," could lead an incautious reader to wonder "is one claim about wages related to another claim about wages?" And, at least in some respect, two completely different wage claims could be related because both arise out of a person's employment relationship. Even using Defendants' alternative language, however, a fair reading in light of all of the other Agreement's Release language would not permit Defendants' interpretation.

But, the Release's actual words are not as Defendants describe. The Release states that Plaintiffs are prohibited only from maintaining an "action * * * relating to the Released Claims." An action that does not assert a Released Claim cannot be an action relating to Released Claims.

To the extent there is any ambiguity in the Agreement, the ambiguity is cleared up by the MOU and Defendants' representations at the Fairness Hearing.

### 4. Plaintiffs' Motion requires only that the Court determine whether Plaintiffs asserted South Carolina law claims. The Court need not delve into the contours or merits of those claims.

To a large extent, Defendants' Response does not argue that Plaintiffs' claims do not arise under South Carolina law but, instead, Defendants ask this Court to determine the contours of or rule on the merits of Plaintiffs' South Carolina law claims. For example, Defendants discuss their (mistaken) belief that Plaintiffs seek a "duplicative windfall" (Doc. 279, PAGEID 4304), question whether Plaintiffs have properly alleged a South Carolina notice claim (*id.*, PAGEID 4300, n. 5), and implicitly argue that Plaintiffs' notice claim does not have cognizable damages (*id.*, PAGEID 4300, n. 6). In other places, Defendants talk about the FLSA preempting South Carolina claims "to the extent that the SCPWA duplicates the FLSA's remedies." *See, e.g.*, Doc.

272, PAGEID 4071.

None of Defendants' merits arguments are appropriate at this stage or in this Court, which, at Defendants' request, declined jurisdiction over the SCPWA claims. Defendants know this Court does not have jurisdiction to rule on the merits of Plaintiffs' SCPWA claims, and should not ask the Court to do so. The only question is whether any of Plaintiffs' *Tarry* claims have been released; *i.e.*, do they possibly arise under South Carolina law? As Plaintiffs have described, the claims arise under South Carolina law and, accordingly, are not released. Doc. 276, PAGEID 4151-57.

Even if Defendants have a cognizable defense to a claim, it does not make a South Carolina claim a Released Claim. For example, if the FLSA preempts a South Carolina law claim, the claim is still under South Carolina law (and thus not released). It is simply preempted—an argument for the *Tarry* court to assess.

Defendants argue that the Agreement does not guarantee that Plaintiffs will prevail on their claims and that Plaintiffs must prove cognizable damages. Doc. 279, PAGEID 4300, n. 6. Plaintiffs agree and have not argued otherwise. Defendants can raise almost any defense they wish to Plaintiffs' SCPWA claims. The one defense Defendants *cannot* raise is that the Agreement here releases claims that it does not release.

Any question other than whether Plaintiffs have asserted claims under South Carolina law is for the *Tarry* court to decide. All of Defendants' "duplicative claims" arguments fall into that category because they (seem to) acknowledge the claim arises under South Carolina law, but simply argue that the claim *also* arises under the FLSA. This is a preemption or duplicative recovery argument for the *Tarry* court to consider.

**5. As part of the Court's continuing jurisdiction to enforce the Agreement, the Court has the power to enforce interpret the Agreement and make appropriate orders.**

As detailed above, the Agreement's plain language's effect matches the MOU: Plaintiffs bring their *Tarry* claims pursuant to South Carolina law, and, thus, the Agreement "does not affect [the] South Carolina state court action." Doc. 276-2. Defendants' Opposition to Plaintiffs' Motion to Amend in *Tarry* contravenes the Agreement's provisions. Accordingly, Plaintiffs ask that this Court enforce the Agreement's terms and order Defendants to withdraw their Opposition in *Tarry*.

In an effort to avoid enforcement, Defendants claim that Plaintiffs' Motion does not state a breach of contract. Although Defendants *have* breached the Agreement, showing a breach is not required to invoke this Court's power to enforce the Agreement. Plaintiffs are asking the Court to interpret and enforce the Agreement's terms via an appropriate order.

In the Fourth Circuit, "[o]nce a settlement agreement is reached, a district court judge possesses 'the inherent authority to enforce a settlement agreement and to enter judgment based upon an agreement without a plenary hearing.'" *Morning v. Dillon County*, No. 4:15-cv-3349, 2018 WL 2945619, *2 (D.S.C. May 25, 2018) (citing *U.S. ex rel. McDermitt, Inc. v. Centex-Simpson Const. Co.*, 34 F. Supp. 2d 397, 399 (N.D.W. Va. 1999) and *Petty v. The Timken Corp.*, 849 F.2d 130, 132 (4th Cir. 1988)), *aff'd sub nom. United States v. Centex-Simpson Const.*, 203 F.3d 824 (4th Cir. 2000). A district court retains jurisdiction to "interpret and enforce a settlement agreement" when a court either so states in an order or incorporates a settlement agreement within an order. *See Rosner v. United States*, 517 F. App'x 762, 765 (11th Cir. 2013).

There is no dispute that the Court retained jurisdiction to enforce the Agreement. *See*

9

Opinion and Order, Doc. 269. As a result, "the district court may later entertain an action arising from the settlement agreement under its inherent authority to 'manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 Fed.Appx. 194, 198 (3d Cir. 2012) (quoting *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 380-81 (1994)).

"Generally, the construction and enforcement of settlement agreements, including the determination as to the validity and scope of a release therein, are governed by general contract principles ..." *Baker v. D.A.R.A. II, Inc.*, No. CV-06-2887, 2008 WL 4368913, *1 (D. Ariz. Sept. 24, 2008). Plaintiffs' motion to enforce the Settlement Agreement is an action for specific enforcement of a contract. *U.S. ex rel. McDermitt, Inc. v. Centex-Simpson Const. Co., Inc.*, 24 F.Supp.2d 397 (N.D.W.Va. Jan. 7, 1999) (citations omitted). "The Court applies federal common law and Virginia's contracts principles, where appropriate, to determine the formation and enforceability of any settlement agreement between the parties." *Saza, Inc. v. Zota*, No. 3:11-cv-363, 2012 WL 527370, *5 (E.D. Va. Feb. 16, 2012) (citing *Auer v. Kawasaki Motors Corp.,* 830 F.2d 535, 538 (4th Cir.1987) and *Gamewell Manufacturing, Inc. v. HVAC Supply, Inc.*, 715 F.2d 112, 116 (4th Cir. 1983). "[T]he court cannot enforce a settlement until it concludes that a complete agreement has been reached and determines the terms and conditions of the agreement." *Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002). "The moving party must prove the existence of an agreement as well as the material terms therein." *Morning*, 2018 WL 2945619, *2 (citing *Saza, Inc.*, 2012 WL 527370, *5).

Courts regularly "enforce" settlement agreements by declaring the proper interpretation of the settlement agreement pending before it, absent a finding of "breach." *See, e.g., Shell's*

*Disposal & Recycling, Inc. v. City of Lancaster,* 504 Fed.Appx. 194 (3d Cir. 2012) (despite no allegation of breach, court held that term of settlement agreement requiring party no longer operate his business by a certain date did not fail for lack of definiteness because the agreement terms did not specify who would take over and/or purchase the business by that date, and required parties to carry out agreement's terms).[4]

Plaintiffs seek to enforce the terms of the Settlement Agreement. They need not prove a breach in order to request this relief from the court. The Court is within its authority to issue each of the orders Plaintiffs have requested it to issue.

Even if Plaintiffs were required to demonstrate a breach, they have done so. No one disputes that preserving the *Tarry* action is a material term of the Agreement and part of the consideration underlying the Agreement. In agreeing to preserve these claims, Defendants undertake a negative obligation—they may not advance the "release" argument they now make in *Tarry*. By filing their Opposition to Plaintiffs' Motion to Amend in *Tarry*, Defendants have

---

[4] *See also Mitchell v. Nevada Department of Corrections*, No. 2:16-cv-37, 2019 WL 247226 (D. Nev. Jan. 17, 2019) (defining the obligations of the parties under their settlement agreement when a question arose as to whether the agreement contemplated the state paying "any" of plaintiff's outstanding child support payments or only those payments that were explicitly discussed during settlement talks); *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575 (3d Cir. 2009) (ruling on motion to enforce contract where there was a question about whether an agreement had been reached and the specific terms of the agreement, but leaving to a jury what those specific terms were); *Simulate, Inc. v. Clark-O'Neill, Inc.*, No. 96-cv-3660, 1996 WL 706598 (E.D. Pa. Dec. 2, 1996) (enforcing settlement agreement by interpreting its terms without any allegation of breach, identifying where agreement existed, and setting for hearing terms that remained in dispute); *Morning*, 2018 WL 2945619 (defining the terms of settlement after plaintiff refused to sign); *Broadbent v. Edynak*, No. 06-21998, 2009 WL 4610711 (S.D. Fla. Dec. 1, 2009) (court interpreted the meaning of settlement agreement's release terms and declaring proper interpretation of the provisions); *Dharia v. Marriott*, No. CV 18-00008, 2019 WL 2713237 (D. Hawaii June 28, 2019) (despite no breach being alleged, defining scope of settlement agreement where one party claimed it had not agreed to all of the terms).

breached this obligation.[5] Defendants' breach forced Plaintiffs to expend effort and expense to preserve the bargain they negotiated.

### 6. Defendants breached their duty of candor to the Court, warranting sanctions.

As described above, Defendants' position about the Release is incorrect under the Agreement's plain language. And, had Defendants addressed their position with the Court prior to the Court's approval of the Agreement, it would have been easily resolved. But that is not what Defendants did. Defendants sat on their interpretation that the Agreement's Release was different than the MOU's release and raised it only after the Court's approval.

Defendants assert "No one tricked these Plaintiffs." Doc. 278, PAGEID 4287. Defendants are attempting exactly that, of course. But more importantly, it is Defendants' representations to *the Court* that are at issue here.

In the context of FLSA settlements, the Court, like Plaintiffs' counsel, acts to protect the interests of the public and plaintiff-employees. *Hackett v. ADF Restaurant Investments*, 259 F.Supp.3d 360, 364 (D. Md. Dec. 19, 2016). It is one thing to try to "sneak one by" an opposing party (which is still a lack of candor). It is another to try that with the Court. If the Court does not punish Defendants' lack of candor, the Court will grant license for future abuses.

Defendants try to confuse this issue by claiming that Plaintiffs seek sanctions for Defendants merely raising an argument. Doc. 279, PAGEID 4296, n. 3. That is not it. It is these actions—representing one thing to the Court, letting the Court rely on that representation, then

---

[5] "The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Navar, Inc. v. Federal Business Council*, 291 Va. 338, 344 (2016) (quotations omitted).

taking the opposite position immediately after the Court approved the Agreement—that necessitates sanctions for Defendants' lack of candor.

### 6.1. Plaintiffs' request for sanctions is procedurally proper.

Defendants oppose the imposition of sanctions by arguing that Plaintiffs' request is procedurally improper. *See, e.g.*, Doc. 279, PAGEID 4306. In doing so, Defendants seem to argue that Plaintiffs seek to proceed under only Rule 11. *Id.* Defendants are incorrect. Plaintiffs' request for sanctions is *not* a motion for sanctions under Rule 11, nor is it intended to be. *See* Doc. 276, PAGEID 4159 (Plaintiffs devote three sentences to note that the Court has the authority under Rule 11(c)(3) to issue a show cause order or, if the Court prefers, Plaintiffs can file a Motion for Sanctions).

Instead, Plaintiffs contend that Defendants breached their duty of candor to the Court, warranting sanctions. *See* Doc 276, PAGEID 4147–4149, 4158–4160. Plaintiffs' request for sanctions is procedurally proper. In the Fourth Circuit, district courts have the inherent power to impose sanctions, notwithstanding of Rule 11 or any other rules or statutes. *U.S. v. Shaffer Equipment Co.*, 11 F.3d 450, 458 (4th Cir. 1993). In response to this very argument, the Fourth Circuit quoted the Supreme Court:

> We discern no basis for holding that the sanctioning scheme of the statute [28 U.S.C. § 1927] and the rules displaces the inherent power to impose sanctions for the bad faith conduct described above. These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions. First, whereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. At the very least, the inherent power must continue to exist to fill in the interstices.

*Id., quoting Chambers v. NASCO, Inc.,* 501 U.S. 32, 46 (1991). "The general duty of candor and truth thus takes its shape from the larger object of preserving the integrity of the judicial system."

13

*Shaffer*, 11 F.3d 458. The Court is well within its authority to impose sanctions against Defendants because Defendants have failed to meet their duty of candor to the Court.[6]

### 6.2.    Defendants' breached their duty of candor to the Court.

"In evaluating the adequacy of settlements in FLSA cases and protecting the public interest, the Court plays a particularly important role. It must take care to ascertain and carefully examine the terms of the proposed settlement." *Hackett*, 259 F.Supp.3d at 364. In doing so, a court acts to protect the FLSA's remedial purposes "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015).

The Court can only fulfill its protective role if the Court understands the parties' agreement. There is no option for Defendants to play fast and loose with their representations regarding the Agreement, particularly because doing so is an attempt to fool the Court into approving something it might not otherwise approve.

Now, in order to escape any punishment, Defendants twist themselves into knots to explain the statements they made at the Fairness Hearing. Defendants claim "they were under no obligation to volunteer to the Court their interpretation of its terms." Doc. 279, PAGEID 4313. The Fourth Circuit held otherwise. *Shaffer*, 11 F.3d at 457-58 (parties have a "'continuing duty to inform the Court of any development which may conceivably affect the outcome' of litigation.").

In this case, the Court did exactly what it is obliged to do when evaluating an FLSA

---

[6] Because Plaintiffs' Motion is procedurally proper and is not a motion under Rule 11 to begin with, Defendants' request for attorney's fees should be denied even if the Court declines to sanction Defendants.

settlement. To ensure that it fully understood the terms of settlement, the Court called a Fairness Hearing and asked the parties to present any issues, disagreements, etc., with the proposed settlement. At that time, Defendants were obliged to present to the Court Defendants' novel interpretation of the Settlement Agreement, which fundamentally changes the Agreement. *See Virzi v. Grand Trunk Warehouse and Cold Storage Co.*, 571 F.Supp. 507, 512 (E.D. Mich. 1983) (stating "[t]he handling of a lawsuit and its progress is not a game. There is an absolute duty of candor and fairness on the part of counsel to both the Court and opposing counsel. At the same time, counsel has a duty to zealously represent his client's interests. The zealous representation of interest, however, does not justify a withholding of essential information…"); *Sisler v. Ford Motor Company*, No. 5:04CV98, 2005 WL 8162521, at *4 (N.D. W. Va. Oct. 27, 2005) (same); *see also Pendleton v. Central New Mexico Correctional Facility*, 184 F.R.D. 637, 641 (D.N.M. 1999) (stating "The Rules of Professional Conduct and the case law suggest that, even in the context of finalizing a settlement agreement and release, a knowing failure to disclose a non-confidential, material, and objective fact upon inquiry by opposing counsel is improper").[7]

Instead, at the Fairness Hearing, Defendants acknowledged that they were bound by the MOU: "[T]he clients that I represent have, in fact, signed the [MOU] and they are going to be bound by that agreement. There is no question about that, Judge." Doc. 276-3, 8:5-9. Since there was undisputed consensus on the MOU, Defendants' stated purpose at the Fairness Hearing was

---

[7] The *Pendelton Court* also wrote, "Practicing law transcends gamesmanship and making a buck." *Id.* In doing so, the Court relied, in part, on the following principles, "[a]n omission of material information that is intended to mislead a third person may constitute a false statement," "[a] statement containing a half-truth may be as misleading as a statement wholly false," and "[a]s professionals [lawyers] should, while trying to solve our clients' problems, make every effort to avoid needless litigation."). *Id.* (internal quotations and citations omitted).

to ensure that the Settlement Agreement was consistent with the MOU.

According to Defendants, there were "two points" in the Settlement Agreement that were inconsistent with the MOU. *Id.* at 11:15-12:7. Upon learning this information, the Court prompted Defendants to explain any aspect of the Settlement Agreement that they took issue with: "What is it that he is disagreeing with in the final agreement? What paragraph what clause?" *Id.* at 12:8-9. In response, Defendants identified two aspects of the Settlement Agreement that they believed contradicted the MOU. *Id.* at 12:10-13. Defendants never mentioned they thought the Release's effect was contrary to the MOU and Plaintiffs' unopposed briefing on the subject (Docs. 249-252). *Id.* at 11-13. To the contrary, Defendants volunteered their interpretation of the settlement's terms to the Court, including whether the SCPWA claims were released. *Id.* at 9-10. Their interpretation at the Hearing was the *opposite* of what it is now.

Based on its understanding of the Agreement at the Fairness Hearing and in the parties' briefing, the Court approved the Agreement. Doc. 269. With full knowledge of Defendants' concealed interpretation of the release language, the Court, undoubtedly, would have required the parties to resolve the issue prior to granting approval. Indeed, it is difficult to find an agreement to be a "fair and reasonable" resolution of claims if the parties themselves disagree materially about what the agreement means and what claims it releases.

The day after the Court granted approval, Defendants insisted that Plaintiffs withdraw all of the claims asserted in *Tarry*.

Defendants claim that they did not address the alleged discrepancy between the MOU and the Settlement Agreement's release language because the Court had not yet approved the Settlement Agreement, and therefore the Agreement had not yet taken effect. Doc. 279, PAGEID

16

4299. Defendants' position ignores that (1) the whole purpose of the Fairness Hearing was to address approving the Agreement, (2) Defendants *did* address a number of the other specific terms of the proposed Settlement Agreement, and (3) the Court asked Defendants' counsel to address any "paragraphs" or "clauses" in the Settlement Agreement that Defendants took issue with. Defendants' explanation does not pass muster.

Defendants also defend their about-face by claiming they made no representations about the *Agreement's* release terms at the Fairness Hearing; only about the *MOU's* terms related to the SCPWA claims:

> Defendants did not represent to the Court anything about the effect of the language of the Settlement Agreement on the S.C. Plaintiffs' claims: the representations from the Fairness Hearing on which the Plaintiffs so heavily rely in their Memorandum principally concern the language in the parties' Memorandum of Understanding reached at the conclusion of their mediation.

Doc. 279, PAGEID 4299. But in context, Defendants' acknowledgment that the MOU did not release the SCPWA claims was an acknowledgment that the Agreement should not release the SCPWA claims. This intent was made clear by a portion of the transcript that Defendants ignore in their Opposition:

> Mr. ABEL: One of the terms [of the MOU] is that the state court cases in South Carolina would be addressed separately outside this agreement. ***[Defendants] agreed to that, they are going to be bound by that.***

*See* Doc. 276-3, Transcript of Fairness Hearing, 9:12–15 (emphasis added). When Defendants address this quote in their Opposition, they leave out the last line. *See* Doc. 279, PAGEID 4300.

After ignoring the vital language, Defendants conclude that the "statement was in reference to the language in Paragraph 3 of the MOU, not to the language of the Settlement Agreement." *Id*. But by stating "they are going to be bound by that," Defendants told the Court

that this term was properly included in the Settlement Agreement—that they did not dispute its inclusion or effect. Defendants' other statements at the Fairness Hearing are consistent with this representation. In fact, Defendants then lamented the fact that they had *not* been able to negotiate a global settlement that included the SCPWA claims. *Id*. at 9:16-23. These statements evidence Defendants' intent with respect to the SCPWA claims.

Defendants' attempt to explain away what they said at the Fairness Hearing is unavailing. The Hearing was about the Agreement, and Defendants addressed the Agreement's terms. If Defendants believed, as they now claim, that the Agreement was not consistent with the MOU, they had a duty to say so. And, certainly, Defendants had a duty to not represent the exact opposite to the Court.

### 6.3.    Sanctions are necessary to stop this type of conduct.

In taking the positions Defendants took at the Fairness Hearing, and since then, Defendants imposed an unacceptable burden on this Court and Plaintiffs. Defendants agreed that "they are going to be bound by" the MOU, which states that the agreement "does not affect South Carolina state court action." *See* Doc. 276-3, 9:12–15. Now, Defendants want more—a benefit they did not bargain for. By doing so, Defendants force Plaintiffs and their counsel to go to great lengths just to preserve what the Court has already awarded to them.

Defendants were aware that the Court's role in the settlement process is to protect the workers' and public's interests. Defendants made their misrepresentations anyway. If allowed to go unchecked, this lack of candor degrades the judicial process—especially in a case where low-wage workers seek their unpaid minimum wages.

Defendants complain, repeatedly, that Plaintiffs are unprofessional because they called

out Defendants' bad behavior. *See, e.g.*, Doc. 279, PAGEID 4293, n.2. Defendants' complaints are the familiar refrain of an aggressor who, once finally stood up to, claims to be a victim. Defendants' behavior deserves a strong rebuke from both Plaintiffs and the Court. Even Defendants admit that they agreed to one thing and are now asking the Court to hold them to something else. With all due respect, this is bad behavior. If the Court does not recognize Defendants' behavior for exactly what it is—a complete lack of candor—the behavior will continue.

The Court is well within its power to impose sanctions on Defendants if it finds Defendants violated their duty of candor. If the Court allows this type of behavior to proceed without so much as a slap on the wrist, the Court is destined to see the same behaviors and arguments in the next case, and the case after that, and the case after that. The Court should sanction Defendants in the amount of the Plaintiffs' fees and costs since the Court's order approving the settlement, and in any other way the Court sees fit.

### 7.  Conclusion

Plaintiffs ask that the Court enter an Order confirming that the Settlement Agreement does not release Plaintiffs' SCPWA claims, an Order that Defendants withdraw their Opposition to Plaintiffs' Motion to Amend in the *Tarry* case to the extent Defendants' opposition is based on an argument that the SCPWA claims have been released under the Settlement Agreement, an Order holding George and Sharon Pitsilides jointly and severally liable for all payments due under the Settlement Agreement, and an Order sanctioning Defendants as the Court deems appropriate.

Respectfully submitted,

19

/s/ Julia Rust
Andrew Biller (*admitted pro hac vice*)
Trial Counsel for Plaintiffs
Andrew Kimble (*admitted pro hac vice*)
Philip Krzeski (*admitted pro hac vice*)
Counsel for Plaintiffs
BILLER & KIMBLE, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
513-452-3442 (Phone)
614-340-4620 (Fax)
(abiller@billerkimble.com)
(akimble@billerkimble.com)

Joshua L. Jewett (VSB 76884)
Julia Rust (VSB 87270)
Counsel for Plaintiffs
PIERCE / MCCOY
101 West Main Street, Suite 101
Norfolk, VA 23510
T: 757-216-0226

C. Ryan Morgan (*admitted pro hac vice*)
Morgan & Morgan, P.A.
20 N. Orange Ave., 14th Floor
Orlando, FL 32802-4979
407-420-1414 (Phone)
407-245-3401 (Fax)
(rmorgan@forthepeople.com)

Andrew Frisch (*admitted pro hac vice*)
Morgan & Morgan, P.A.
600 N. Pine Island Rd., Ste. 400
Plantation, FL 33324-1311
954-318-0268 (Phone)
954-327-3013 (Fax)
(afrisch@forthepeople.com)

**Certificate of Service**

I hereby certify that I will electronically file the foregoing, which will then send a notification of such filing (NEF) to the following:

Christopher Abel
William A.M. Burke
Wilcox & Savage, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, VA 23510

/s/ Julia Rust
Joshua L. Jewett
Julia Rust
Counsel for Plaintiffs
PIERCE / MCCOY, PLLC
101 West Main Street, Suite 101
Norfolk, VA 23510
T: 757-216-0226
F: 757-257-0387
E: jjewett@piercemccoy.com

21